1  WILLIAM JOHN DAUGHTERY
2  F-79985 CHUCKAWALLA VALLEY STATE PRISON
3  P.O. BOX 2349/D10-110UP
4  BLYTHE, CA. 92226

FILED
2008 MAY -6 PM 2:52
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

6  UNITED STATES DISTRICT COURT
7  SOUTHERN DISTRICT OF CALIFORNIA

NUNC PRO TUNC
MAY -2 2008

9  WILLIAM JOHN DAUGHTERY, CDCR      ) CASE NO. 08 CV 0408-WQH(BLM)
10  # F-79985,                        ) EX PARTE MOTION FOR
11           PLAINTIFF,               ) RECONSIDERATION of APPOINTMENT
12  V.                                ) of COUNSEL AND REVERSAL
13  DENNIS WILSON, SAN DIEGO POLICE OFFICER; ) of THE ORDER DENYING
14  ESMERALDA TAGABAN, SAN DIEGO POLICE ) REQUEST for APPOINTMENT
15  OFFICER; SERGEANT GRIFFIN; DETECTIVE ) of COUNSEL [DOC. NO 13]
16  LEMUS,                            )
17           DEFENDANTS.              ) DATED: 29 APRIL 2008

18  ON APRIL 23, 2008, UNITED STATES MAGISTRATE JUDGE
19  BARBARA L. MAJOR DENIED REQUEST BY PLAINTIFF FOR
20  APPOINTMENT of COUNSEL PURSUANT 28 U.S.C. § 1915(e)(1),
21  (DOC. NO. 13).
22  THE MAGISTRATE CITED INSUFFICIENT SHOWING of "EXCEPTIONAL
23  CIRCUMSTANCES" NECESSITATING COUNSELS' ASSISTANCE.
24  I DO NOT APPEAL THE RULING, BUT INSTEAD PLEAD
25  RECONSIDERATION BASED UPON THE FOLLOWING EXPOSITION
26  of RELEVANT FACTS SUPPORTING A GRANT THAT
27  WOULD BE IN THE INTERESTS of JUSTICE AS WELL AS
28  SATISFYING THE STATUTORY REQUIREMENTS.

1 of 10

CASE NO. 08CV0408-WQH (BLM)
29 APRIL 2008

PAGE 2 OF 10

1. EX PARTE MOTION FOR RECONSIDERATION of APPOINTMENT
2. of COUNSEL IN CIVIL RIGHTS CASE NO. 08CV0408-WQH
3. (BLM)
4. THE MAGISTRATE RIGHTLY DEMONSTRATED THE DISCRETIONARY
5. AUTHORITY GOVERNING THE RULING ON THE MOTION AND ALSO
6. ENUMERATED THE REQUISITES FOR GRANTING SUCH.
7. FIRST, THE QUESTION OF INDIGENCY WAS ADDRESSED (P.2 LINE
8. # 23 THRU 28) WITHOUT CLEAR INDICATION OF PLAINTIFF HAVING
9. MET SHOWING. I STATE IN SUPPORT: ① GRANTING OF FORMA
10. PAUPERIS AFTER SUBMITTAL OF FINANCIAL STATEMENT. ② THE
11. FACT THAT I HAVE BEEN INCARCERATED SINCE MAY 2007 WITHOUT
12. EMPLOYMENT OR MEANS. AND WAS IN COUNTY JAIL FROM MARCH
13. 2006 UNTIL JANUARY 2007 ALSO WITHOUT FINANCES OR EMPLOY-
14. ③ I DO NOT HAVE A PAYING PRISON JOB.
15. SECOND, THE TWO-PRONGED EVALUATION (P.2, LINE 26-28)
16. AND P.3, LINE 1 THRU 8 of DENIAL ORDER) WILL BE DISCUSSED
17. ADDRESSING 'ABILITY TO ARTICULATE FACTUAL BASIS' PART
18. of THE TEST AND THE MAGISTRATES CONCLUSION REGARD-
19. ING-FIRST, THEN THE COMPLEXITY ISSUE.
20.     I. ARTICULATE AND GRASP of CASE.
21. MAGISTRATE QUOTES AGYEMAN V. CORRECTIONS CORP of
22. AMERICA, 390 F.3d, 1101, 1188 (9th CIR. 2004) EXCEPTIONAL
23. CIRCUMSTANCES EVALUATION of LIKELIHOOD of PLAINTIFFS
24. SUCCESS ON THE MERITS (P.2, LINE 18-19) THEN
25. STATES (P.3, LINE 1 THRU 6) IN EFFECT: HAVING SURVIVED
26. INITIAL SCREENING, PLAINTIFF HAS ABILITY TO ARTICULATE
27. FACTUAL BASIS. CONSEQUENTLY THERE IS CONCOMITANT
28. IMPLICATION THAT SUCCESS ON THE MERITS IS PROBABLE / POSSIBLE

CONTINUED P.3

CASE NO. 08CV0408-WQH(BLM)
29 APRIL 2008
PAGE 3 of 10

1. EX PARTE MOTION RECONSIDERATION of COUNSEL
2.     I. GRASP of CASE - CONT. - LIKELIHOOD
3. PLAINTIFF, SINCE HE HAS A GOOD CASE SO FAR WOULD
4. NOT SEEM TO NEED COUNSEL. PLAINTIFF CONTENDS IN EFFECT
5. FOR THAT VERY REASON (i.e. LIKELYHOOD of SUCCESS) HE SORELY
6. NEEDS ADEQUATE LEGAL ASSISTANCE. QUOTING: SPEARS
7. V. UNITED STATES, 266 F. SUPP. 22, 25, 26 (S.D.W.Va
8. 1967) (CITATIONS OMITTED) "GENERAL RULE SEEMS TO BE THAT
9. BEFORE THE COURT IS JUSTIFIED IN EXERCISING ITS DISCRETION
10. IN FAVOR OF AN APPOINTMENT, IT MUST FIRST APPEAR
11. THAT THE CLAIM HAS SOME MERIT IN FACT AND LAW,
12. WERE IT OTHERWISE, THE APPOINTMENT, IN MOST INSTANCES
13. WOULD WORK A HARDSHIP ON COUNSEL WITH NO CONCOMITANT
14. BENEFIT TO THE PARTY REQUESTING IT." UN QUOTE.
15. ALSO: MACKLIN V. FREAKE (1981)(C.A.,7(IND.)) 1981
16. 650 F.2d 885 at 650 F.2d 887 QUOTE: "COUNSEL
17. IS OFTEN UNWARRANTED WHERE THE INDIGENT'S CHANCES
18. OF SUCCESS ARE EXTREMELY SLIM."
19. PLAINTIFF'S DISABILITY AND THE IMPACT ON ABILITY TO
20. ARTICULATE REQUIRES ELUCIDATION (P 3, LINE 9-11)
21. PLAINTIFF HAS PHYSICAL AND MENTAL DISABILITIES, BOTH
22. ARISING OUT OF CLAIM INCIDENT AND PRE-EXISTING.
23. MENTAL: DIAGNOSIS (SINCE 2003) CLINICAL DEPRESSION
24. SYMPTOMS LIMITING: ① LOSS OF TIME (AMNESIA LIKE), INATTENTIVENESS
25. ENNUI; LISTLESSNESS, DISAFFECT AND
26. SUICIDAL IDEATION. ② MEDICATIONS: Ⓐ ZOLOF: SEROTONIN REUPTAKE
27. INHIBITOR - CAUSE SEXUAL SIDE EFFECTS, NAUSEA, BLURRED VISION
28. LACK OF FOCUS AND CONCENTRATION. SEE ATTACHED IMITREX INFO.
    CONTINUED

CASE NO. 08CV0408-WQH(BLM)
29 APRIL 2008

PAGE 4 of 10

1. EX PARTE MOTION RECONSIDERATION of COUNSEL
2. I.(cont) GRASP of CASE — ARTICULATE
3. MEDICATION ⑧ TRAZODONE: ANTIANXIETY: RACING
4. THOUGHTS, HOT FLASHES, DROWSINESS, 'CRAWLING SKIN'
5. EFFECT. MANIC BEHAVIOR SIDE EFFECTS, PRIAPISM.
6. OBVIOUSLY, PEAK CONCENTRATION AND RATIONAL PROCESSES
7. ARE IMPACTED IN THIS ILLNESS AND TREATMENT — COMBINED
8. WITH OTHER DEBILITIES (INCARCERATION ETC) TO BE DISCUSSED
9. ARE DELETERIOUS. I CAN'T ACT AS A NORMAL PERSON
10. CAN ACT.
11. PHYSICAL: PLAINTIFF suffers PHYSICAL DEBILITIES, PRE-EXISTING
12. AND AS A RESULT OF CLAIM INCIDENT.
13. ① SPINAL INJURY: CHOKE HOLD BY POLICE DAMAGED NECK MUSCLES
14. AND DISCS, FREQUENT MIGRAINES + PAIN: MEDICATION — IMITREX
15. (SUMATRIPTAN SUCCINATE) SIDE EFFECTS: CHEST PAIN, ABDOMINAL
16. PAIN, SEROTONIN SYNDROME (See IMITREX ATTACHED INFO SHEET) WITH
17. ZOLOFT, CONFUSION, HALLUCINATIONS ETC. IMPACT: I CAN'T
18. STUDY OR PRESENT UNDER THE INFLUENCE OF PAIN OR
19. MEDICATION. ② SEPARATED SHOULDER: POLICE TACKLE TO
20. CONCRETE CAUSED TORN ROTATOR CUFF IN LEFT SHOULDER
21. MOBILITY LIMITED: MEDICATION: TYLENOL; IBUPROFEN.
22. EFFECTS: SLEEPLESSNESS, STOMACH PAIN. IMPACT I
23. CAN'T CONCENTRATE OR MANIPULATE TYPING.
24. ③ INTERNAL BRUISING: BODY SLAM BY POLICE DAMAGED
25. INTERNAL ORGANS. ④ TESTICULAR RUPTURE: POLICE
26. KNEED (PERHAPS ACCIDENTAL) GROIN RESULTING SWOLLEN
27. EPIDIDYMUS ON LEFT TESTICLE. IMPACT: CONSTANT
28. PAIN. MEDICATION: TYLENOL & IBUPROFEN.

CONTINUED. P5

William Naughton
Case No. 08CV0408-WQH(BLM)
29 April 2008

PAGE 5 OF 10

EX PARTE MOTION RECONSIDERATION OF COUNSEL

I. ARTICULATE CLAIMS LIMITATIONS cont

PHYSICAL CONTINUED

5) GLAUCOMA: PRE-EXISTING EXCESS EYE PRESSURE CONTROLLED WITH MEDICATION, EYEDROPS TIMOLOL MALEATE .5% IMPACT: EYE FATIGUE, PARTIAL BLINDNESS. HEADACHES.

MAGISTRATE REQUIRES DESCRIPTION OF DOCUMENTS NECESSARY (P.3, LINE 11 + 12) AND WHY INCARCERATION PREVENT AMASSING AND PROCESSING WORK PRODUCT. THE FOLLOWING ADDRESSES: ① DOCUMENTS ② COMPLEXITY ③ INCARCERATION ④ DISCOVERY OF EVIDENCE + WITNESSES ⑤ ALL THINGS INACCESSIBLE TO IMPRISONED ⑥ 'EXCEPTIONAL' IN TOTALITY AND CONCLUSION.

II. Complexity AND WHAT I can't DO FROM JAIL

A. Documents? ① I NEED POLICE REPORTS OF INCIDENT: PURPOSE CAL EVIDENCE CODE 1046 REQUIREMENT FOR PITCHESS REQUEST: City of Santa Cruz, 260 CAL RPTR 520 (1989) 49 CAL 3d 74 AT P.P. 8586 AND HERRERA V. SUPERIOR COURT (1985). SIMILAR PAST MISCONDUCT (CAL EVIDENCE CODE 1043(b)(2,3), 1045 CAL. EVIDENCE § 1040, DIV. 8, CH. 4 PARA 17 CIVIL RIGHTS ACTIONS: MARTINEZ V. CITY OF STOCKTON, E.D. CAL 1990, 132 F.R.D 677, AFFIRMED 12 F.3d 1107 PROPENSITY TO USE EXCESSIVE FORCE: PEO. V MUNICIPAL COURT, CITY AND COUNTY OF SAN FRANCISCO (APP 1 DIST 1980) 162 CAL RPTR 347, 102 CAL APP 3d 181 § 1045 EVIDENCE CODE.

Cont. P.6

WILLIAM DAUGHERTY
CASE NO. 08CV0408-WQH(BLM)
29 APRIL 2008
PAGE 6 of 10

1. Ex Parte Motion Reconsideration of Counsel
2.     II. Complexity and Documents
3. PLAINTIFF'S BURDEN IS NOT PROVING 'SHOCK THE
4. CONSCIENCE STANDARD' OF ROCHIN BUT 'REASONABLENESS'
5. DOCTRINE OF 4th AMENDMENT APPLICABLE TO STATES
6. THROUGH THE 14th AMENDMENT U.S. CONSTITUTION. ① MATERIALS
7. P.C. 1101(B) AND (C) AND SECTION 352 INTENT AND (PITCHESS)
8. MOTIVE FOR MISCONDUCT BY OFFICERS, HAS TO BE
9. OBTAINED. ② EXPERT WITNESS ON POLICE PROCEDURE
10. NECESSARY TO SHOW 'UNREASON' OF DETAINING AND
11. ASSAULTING PERSON IN GREEN JACKET WHEN
12. OFFICER WAS ORDERED TO STOP PERSON IN BLACK *NOTE:
13. OR BLUE JACKET. ③ A 'TACTICAL TAPE' - A RECORDING
14. OF DRUG STING ⓐ STATES 'BLACK JACKET SUSPECT.'
15. ⓑ STATES 'WE LOST SIGHT OF HIM' ⓒ DOES NOT
16. DESCRIBE SUSPECT AS WEARING GLASSES IN ADDITION
17. TO BLACK JACKET. (PLAINTIFF WAS WEARING GLASSES
18. AND GREEN JACKET, 2 BLOCKS AWAY) ⓓ STATES 'DETAIN
19. EVERYBODY AT THAT CORNER' (INDICATING MANY PEOPLE
20. AT SCENE OF TRANSACTION, OTHER POSSIBLE SUSPECTS
21. IN AREA BESIDES PLAINTIFF.) SUFF. LAW NO INFORMATION TO ESTAB. PROBABLE CAUSE.
22. ④ WITNESSES: ⓐ RONALD TYSON; IN ARRESTING PATROL CAR.
23. WITNESSED ALL FROM '(1) ONE FOOT' AWAY WHILE DETAINED IN
24. BACK SEAT OF WILSONS CAR. TYSON IS IN PRISON. UNKNOWN
25. LOCATION. HE TESTIFIED AT A 1538.5 SUPPRESSION HEARING.
26. ⓑ ROBERT MONTGOMERY; BACKSEAT PRISONER; WITNESSED (TRIAL)
27. FROM 15 FEET, BEATING BY TAGABAN. FROM TAGABANS
28. SQUAD CAR. ON PROBATION SOMEWHERE IN SAN DIEGO

*NOTE: LINE 12, SUPRA
PEO. V PRICE (1991) 1 CAL 4th 324, 409    Cont. P. 7
CITING PEO. V DUNCAN (1986) 42 CAL 3d 91, 97
PEO. V. LEYBA (1981) 29 CAL 3d 591, 596-597

CASE NO. 08CV0408-WQH (BLM)
29 APRIL 2008

PAGE 7 of 10

1. Ex Parte Motion for Reconsideration of Counsel
2. II. Complexity and Documentary - Witnesses
3. © Witnesses (Cont.) All officers involved —
4. I have difficulty serving subpoena and
5. summons because badge number and correct
6. names are unavailable. (Prison does not allow
7. telephone books.) I swear this is true.
8. ⒹExhibits: ①Green coat worn by plaintiff to
9. illustrate not BLACK: is in possession of
10. former trial counsel and must be obtained
11. to show not "black or blue". (Suspect wore BLACK clothing)
12. Ⓔ Several photos of beaten and bruised plaintiff
13. Ⓕ Medical Records: ① Jail medical and psychological
14. showing immediate outcry and extent of injuries.
15. ② Civilian follow-up medical evaluations ③ Prison
16. medical and psych. evaluation to prove injury
17. Prison will not release medical/psych records to
18. an inmate as matter of policy.
19. Ⓖ Other Documents: All trial transcripts and
20. all of defense attorneys records from criminal
21. trial. I need for contradictory statements/impeach-
22. ment prior testimony. I cannot locate Officer Wilson
23. (see: enclosed summons Marshals forms)
24. Ⓗ How prison prevent (p.3-line 13-14-15) effective
25. pursuit of claim: ① Frequent (Lock-Down) see attached
26. news and memos, health and security reason.
27. ② Limited library hours: 1 PM to 3:00 PM 4 days a week.
28. 6 man limit. (Priority for court deadlines)

Cont. P8

WILLIAM DAUGHTERY
CASE NO. 08CV0408 - WQH(BLM)
29 APRIL 2008

1. EX PARTE MOTION for RECONSIDERATION of COUNSEL
2.     COMPLEXITY AND DOCUMENTS - PRISON
3. (1) PRISON (CONT.) PRISON HAS NO TELEPHONE BOOKS
4. AS A MATTER OF POLICY. (CONTACT CHIEF LIBRARIAN
5. CHUCKAWALLA PRISON)
6. THE COMPLEXITY ARISES IN THE QUESTION:
7. HOW DOES A PERSON DENIED ACCESS TO OUTSIDE COMMUNICATION
8. (TELEPHONES ARE COLLECT ONLY, NO ONE ACCEPTS CHARGES)
9. CONTACT AN EXPERT WITNESS (NO PHONE BOOK OR LISTS), NO INTERNET;
10. WITH MENTAL AND PHYSICAL IMPAIRMENT THINK OF
11. COGENT ARGUMENTS AND RESEARCH FACTS WITH
12. LITTLE ACCESS TO MATERIALS, NO TYPEWRITER/COMPUTERS, LOCATE WITNESSES
13. THAT ARE LOST IN PRISON SYSTEM AND SUBPOENA THEM,
14. FIND PROBATIONER WITNESSES, LOCATE POLICE THAT ARE
15. MOVING FROM JOB TO JOB AND HAVE UNLISTED PHONE
16. AND ADDRESS INFO. AND OTHER IDENTITY PROTECTIONS,
17. PROVE THAT POLICE ACTED UNREASONABLY WHEN HE
18. IS REDUCED TO ACCUSING OFFICERS WITHOUT ANY OF THE
19. ABOVE ITEMS AND THERE ARE SEVERAL OF THEM AND
20. ONLY HIMSELF TO CONTEST CITY ATTORNEYS.?
21.     II CONCLUSION
22. PETITIONER IS A MENTALLY, PHYSICALLY LIMITED
23. PERSON, INCARCERATED WITH SEVERELY LIMITED
24. RESOURCES, IS INDIGENT, WITH INSUFFICIENT GRASP
25. OF HIS CASE, INADEQUATE ABILITY TO ARTICULATE
26. THE FACTUAL BASIS OF HIS CLAIM, HAS A LIKELYHOOD
27. OF SUCCESS ON THE MERITS AND HAS COMPLEX (NOT UNIQUE)
28. LEGAL ISSUES INVOLVED, NEEDS DOCUMENTS

CONT. P.9

CASE NO. 08CV0408-WQH(BLM)
29 APRIL 2008

PAGE 9 OF 10

## III. CONCLUSION (CONT)

AND MATERIAL AND WITNESSES (PERCIPIENT AND EXPERT) THAT ARE BEYOND HIS REACH, NEEDS TO ASSEMBLE A COHERENT ATTACK ON THE CREDIBILITY OF DEFENDANTS WITH NO LEGAL TRAINING OR EDUCATION. THE TOTALITY OF THE CIRCUMSTANCES CONSIDERED EN MASS DO INDEED CONSTITUTE SUFFICIENT GROUNDS FOR A FINDING OF 'EXCEPTIONAL CIRCUMSTANCES' AND MERITS THE EXERCISE OF THE DISCRETIONARY POWER TO 'REQUEST' THAT AN ATTORNEY REPRESENT INDIGENT CIVIL LITIGANT. DILLON V. UNITED STATES, 307 F.2d 445, 447 (9th CIR. 1962) QUOTE; "THE QUESTION IS HOW BADLY THE PRISONER NEEDED HELP, THE SERIOUSNESS OF THE PROBLEM (AT 307 F.2d 450[6]) "MUST BE JUDGED FROM HIS POINT OF VIEW." THAT WHICH IS SIMPLE, ORDERLY AND NECESSARY TO THE LAWYER, AS THE SUPREME COURT HAS POINTED OUT, TO THE UNTRAINED LAYMAN MAY APPEAR INTRICATE COMPLEX AND MYSTERIOUS - RESOLUTION OF ISSUE REQUIRED DEVELOPMENT OF EVIDENCE RELATING TO THE JUDGES PRACTICE.... THE KNOWLEDGE AND UNDERSTANDING OF THE PRINCIPALS [IN THIS CLAIM KNOWLEDGE OF ARRESTING OFFICER. IE. DID HE KNOW ENOUGH TO STOP, LET ALONE ASSAULT PLAINTIFF] AND WHAT ACTUALLY TRANSPIRED AT A SERIES OF CONFERENCES [IN PRESENT CASE - WHAT HAPPENED AT P.C. 1538.5 HEARING? WHY WAS PITCHESS GRANTED?] HELD OVER A PERIOD OF SIX WEEKS

CONT. P. 10

CASE NO. 08CV0408-WQH (BLM)
29 APRIL 2008

10 OF 10

1. EX PARTE MOTION FOR RECONSIDERATION OF COUNSEL
2. II. CONCLUSION (CONT.)
3. DILLON V. US. (CONT)
4. OR MORE INVOLVING POSSIBLY A DOZEN [IN PRESENT CASE OFFICERS:
5. WILSON, TAGABAN, LEMUS, GRIFFIN, MR. TYSON, MR.
6. MONTGOMERY, JUDGE KENNEDY (1538.5"), JUDGE
7. SMYTH (TRIAL, CRIMINAL), PLAINTIFF, MENTAL HEALTH
8. AND JAIL DOCTORS AND CLINICIANS, EXPERT WITNESSES]
9. PERSONS, MOST OF WHOM WERE LAWYERS OR
10. OFFICIALS. IT IS UNLIKELY THAT A LAYMAN COULD
11. PROPERLY INVESTIGATE THE PROBLEMS PRESENTED BY
12. APPELLANT'S MOTION EVEN IF HE WERE NOT CONFINED
13. TO PRISON OR CONSTANTLY UNDER GUARD, AND IT
14. IS CLEAR A LAYMAN COULD NOT ORGANIZE AND
15. PRESENT THE EVIDENCE ON SUCH ISSUES IN A
16. COURT ROOM; PARTICULARLY WHEN HE HIMSELF WOULD
17. BE A PARTICIPANT.: UNQUOTE: DILLON V. US SUPRA
18. THE PLAINTIFF HAS RELIED ON A COALITION OF 'JAILHOUSE
19. LAWYERS' (ASSEMBLED ONE-TIME-ONLY) TO PREPARE THIS
20. MOTION FOR RECONSIDERATION FOR APPOINTMENT OF COUNSEL
21. AS A FAVOR TO AN 'UNFORTUNATE' VICTIM. PLAINTIFF CAN
22. NOT AFFORD "JAILHOUSE LAWYER" EITHER. A LIST OF DOCTORS
23. IS APPENDED TO THIS MOTION WITH OTHER EXHIBITS SUPRA.
24. FOR FOREGOING REASONS, FIND PLAINTIFF HAS MET
25. REQUISITE "EXCEPTIONAL CIRCUMSTANCES" AND GRANT
26. MOTION FOR RECONSIDERATION AND VACATE ORDER TO
27. DENY APPOINTMENT OF COUNSEL. RESPECTFULLY
28. COPY TO: CITY ATTORNEY     WILLIAM DAUGHTERY
         COUNSEL FOR DEFENDANTS                PLAINTIFF
         1200 3RD AVENUE
         SAN DIEGO, CA 92101      (BY MAIL)    29 APRIL 2008

WILLIAM DAUGHTER
CASE NO: 08CV0408-WQH(BLM)
29 APRIL 2008

1 of 1

1. EX PARTE MOTION for RECONSIDERATION APPOINTMENT of COUNSEL
2. LIST OF DOCTORS
3.
4. MENTAL HEALTH PROFESSIONALS
5. DR. DONNA MILLS  (1) ARETA CROWELL CENTER
6.                      531 16th AVE SD. 92101 (619) 233-3432
7.                  (2) ISIS HOUSE
8.                      IMPERIAL BEACH, CA
9.                  (3) NEW VISTAS
10.                     734 10th AVE SD. 92101 (619) 239-4663
11.                 (4) JARY BARRETO CENTER
12.                     2865 LOGAN AVE SD 92113 (619) 232-4357
13. DR. JORGE NARANJO   1173 FRONT ST. SD CA. 92101 (619) 615-2444
14. GIL TAPIA           1173 FRONT ST. SD 92101 (619) 615-2737
15. DR. PRITTI BHATTI   , SCRIPS MERCY CLINIC SD. CA 92104
16.                     4077 5th AVE (619) 260-7022
17. SD. COUNTY MENTAL HEALTH  ROSECRANS ST. SD. 92111
18. VISTA COUNTY JAIL PSYCH.   VISTA, CA
19. GEORGE BAILEY COUNTY JAIL, OTAY MESA, S.D. CA
20. PHYSICAL HEALTH
21. DR. NEIL CHOPIN         HILLCREST SD. 92104
22. DR. PRITTI BHATTI       4077 5th AVE (619) 260-7022
23. SD. COUNTY JAIL CENTRAL  1173 FRONT ST.
24. GEORGE BAILEY COUNTY JAIL  ALTA ROAD, OTAY MESA SD
25. CHUCKAWALLA VALLEY PRISON  BLYTHE, CA
26. RICHARD DONOVAN PRISON  ALTA ROAD OTAY MESA SD. CA.
27.
28.

CASE NO: 08CV0408--WQH (BLM)
29 APRIL 2008

1. EX PARTE MOTION for RECONSIDERATION APPOINTMENT COUNSEL
2. POINTS AND AUTHORITIES
3. PITCHESS V. SUPREME COURT (1974) 11 CAL 3d 531, 113 CAL
4. RPTR 897, 522 P 2d 305
5. CITY OF SANTA CRUZ 49 CAL 3d 74 AT P.P. 85 86, 260
6. CAL. RPTR. 520 (1989)
7. CALIFORNIA EVIDENCE CODE SECTIONS: 1040, 1043(b), (2,3)
8. 1045, 1046.
9. MARTINEZ V. CITY OF STOCKTON, E.D. CAL 1990, 132 F.R.D 677
10. AFFIRMED 12 F.3d 1107
11. CAL. PENAL CODE SECTION 915
12. MACKLIN V. FREAKE (C.A. 7 (IND) 1981, 650 F.2d 885
13. SPEARS V. U.S., 266 F. SUPP. 22, 25, 26 (S.D.W.Va. 1967)
14. DILLON V. US., 307 F.2d 445, 447 (9th CIR. 1962)
15. PEO. V. PRICE (1991) 1 CAL 4th 324, 409 CITING PEO. V. DUNCAN
16. (1986) 42 CAL 3d 91, 97; PEO. V. LEYBA (1981) 29 CAL 3d 591, 596-597
17. GRAHAM V. CONNOR 490 U.S. 386, 395, 109 S. Ct 1865
18. 871, 104 L. Ed 2d 443 (1989)
19. AGYEMAN V. CORRECTIONS CORP OF AMERICA, 390 F.3d 1101,
20. 1103, (9th CIR. 2004), QUOTING WILBORN V. ESCALDERON, 789
21. F 2d 1328, 1331 (9th CIR. 1986)
22. U.S.C. 28 SECTION 1915(e)(1) / 28 USC § 1915(e)(1)
23. US. V. GIULIANI, ND. ILL 1984, 581 F. SUPP 212
24. US. V. BOWLES C.A. 5 (Ga.) 1980, 625 F.2d 526
25. US. V. HOLLOWAY (D. KAN. 1995) 906 F. SUPP. 1437
26. PEO. V. BRACAMONTE (1975) 12 CAL. 3d 528,
27.
28.

WILLIAM DAUGHTREY
CASE No. 08CV0408-WQH (BLM)
29 APRIL 2008

## Information for the Patient
## IMITREX® (sumatriptan succinate) Tablets

Please read this leaflet carefully before you take IMITREX Tablets. This provides a summary of the information available on your medicine. Please do not throw away this leaflet until you have finished your medicine. You may need to read this leaflet again. This leaflet does not contain all the information on IMITREX Tablets. For further information or advice, ask your doctor or pharmacist.

**Information About Your Medicine:**

The name of your medicine is IMITREX (sumatriptan succinate) Tablets. It can be obtained only by prescription from your doctor. The decision to use IMITREX Tablets is one that you and your doctor should make jointly, taking into account your individual preferences and medical circumstances. If you have risk factors for heart disease (such as high blood pressure, high cholesterol, obesity, diabetes, smoking, strong family history of heart disease, or you are postmenopausal or a male over 40 years of age), you should tell your doctor, who should evaluate you for heart disease in order to determine if IMITREX is appropriate for you. Although the vast majority of those who have taken IMITREX have not experienced any significant side effects, some individuals have experienced serious heart problems and, rarely, considering the extensiveness of IMITREX use worldwide, deaths have been reported. In all but a few instances, however, serious problems occurred in people with known heart disease and it was not clear whether IMITREX was a contributory factor in these deaths.

**1. The Purpose of Your Medicine:**

IMITREX Tablets are intended to relieve your migraine, but not to prevent or reduce the number of attacks you experience. Use IMITREX Tablets only to treat an actual migraine attack.

**2. Important Questions to Consider Before Taking IMITREX Tablets:**
If the answer to any of the following questions is YES or if you do not know the answer, then please discuss it with your doctor before you use IMITREX Tablets.

- Are you pregnant? Do you think you might be pregnant? Are you trying to become pregnant? Are you using inadequate contraception? Are you breastfeeding?
- Do you have any chest pain, heart disease, shortness of breath, or irregular heartbeats? Have you had a heart attack?
- Do you have risk factors for heart disease (such as high blood pressure, high cholesterol, obesity, diabetes, smoking, strong family history of heart disease, or you are postmenopausal or a male over 40 years of age)?
- Have you had a stroke, transient ischemic attacks (TIAs), or Raynaud syndrome?
- Do you have high blood pressure?
- Have you ever had to stop taking this or any other medicine because of an allergy or other problems?
- Are you taking any other migraine medicines, including other 5-HT$_1$ agonists or any other medicines containing ergotamine, dihydroergotamine, or methysergide?
- Are you taking any medicine for depression such as monoamine oxidase inhibitors, selective serotonin reuptake inhibitors (SSRIs), or serotonin norepinephrine reuptake inhibitors (SNRIs)?
- Have you had, or do you have, any disease of the liver or kidney?
- Have you had, or do you have, epilepsy or seizures?
- Is this headache different from your usual migraine attacks?

Remember, if you answered YES to any of the above questions, then discuss it with your doctor.

# IMITREX® (sumatriptan succinate)

## Information for the Patient
## IMITREX® (sumatriptan succinate) Tablets
*(cont)*

contraception, unless you have discussed this with your doctor.

**4. How to Use IMITREX Tablets:**

For adults, the usual dose is a single tablet taken whole with water or other fluids. Do not split tablets.

A second tablet may be taken if your symptoms of migraine come back or if you have a partial response to the initial dose, but not sooner than 2 hours following the first tablet. For a given attack, if you have no response to the first tablet, do not take a second tablet without first consulting with your doctor. Do not take more than a total of 200 mg of IMITREX Tablets in any 24-hour period. The safety of treating an average of more than 4 headaches in a 30-day period has not been established.

**5. Side Effects to Watch for:**

- Some patients experience pain or tightness in the chest or throat when using IMITREX Tablets. If this happens to you, then discuss it with your doctor before using any more IMITREX Tablets. If the chest pain is severe or does not go away, call your doctor immediately.
- If you have sudden and/or severe abdominal pain following IMITREX Tablets, call your doctor immediately.
- Some people may have a reaction called serotonin syndrome when they use certain types of antidepressants, SSRIs or SNRIs, while taking IMITREX Tablets. Symptoms may include confusion, hallucinations, fast heart beat, feeling faint, fever, sweating, muscle spasm, difficulty walking, and/or diarrhea. Call your doctor immediately if you have any of these symptoms after taking IMITREX Tablets.
- Shortness of breath; wheeziness; heart throbbing; swelling of eyelids, face, or lips; or a skin rash, skin lumps, or hives happens rarely. If it happens to you, then tell your doctor immediately. Do not take any more IMITREX Tablets unless your doctor tells you to do so.
- Some people may have feelings of tingling, heat, flushing (redness of face lasting a short time), heaviness or pressure after treatment with IMITREX Tablets. A few people may feel drowsy, dizzy, tired, or sick. Tell your doctor of these symptoms at your next visit.
- If you feel unwell in any other way or have any symptoms that you do not understand, you should contact your doctor immediately.

**6. What to Do if an Overdose is Taken:**

If you have taken more medicine than you have been told, contact either your doctor, hospital emergency department, or nearest poison control center immediately.

**7. Storing Your Medicine:**

Keep your medicine in a safe place where children cannot reach it. It may be harmful to children. Do not remove tablets from the packaging until you are ready to use them. Do not store the tablets in any other container.

Store your medicine away from heat and light. Do not store at temperatures above 86°F (30°C), or below 36°F (2°C).

If your medicine has expired (the expiration date is printed on the treatment pack), throw it away as instructed. If your doctor decides to stop your treatment, do not keep any leftover medicine unless your doctor tells you to. Throw away your medicine as instructed.



GlaxoSmithKline
Five Moore Drive, Research Triangle Park, NC 27709

©2006, GlaxoSmithKline. All rights reserved.

State of California                               California Department of Corrections and Rehabilitation

# Memorandum

WILLIAM DAUGHTERY
CASE NO: 08CV0408-WQH (BLM)
APRIL 29, 2008

Date:   March 5, 2008

To   :   All Facility D Staff and Inmates

Subject:   **INFLUENZA EXPOSURE**

Chuckawalla Valley State Prison (CVSP) is experiencing significant numbers of inmates with influenza symptoms. Most of these cases have impacted Facilities A and B. However, Facility D has a few occurrences. Based on recommendations from medical services, **all** visiting and volunteer activities will be cancelled for this weekend (March 8 and 9, 2008). The following are basic precautions to minimize your possible exposure to the flu.

- Practice good personal hygiene by continuously washing your hands with soap and water.

- Sanitize all areas others touch; such as showers, railings, seats etc.

- Refrain from sharing food, beverages, dishes and utensils.

- Staff should utilize gloves when conducting bed area and clothed body searches. Upon completion, immediately wash your hands with soap and water.

It is imperative every effort is made to sanitize areas with high usage. The facility sergeant will distribute bleach to each housing unit. The bleach shall be mixed with water to ensure 25 parts water to 1 part bleach solution. Wash all railings, seats, tabletops and every other high traffic areas to minimize the possible contamination. If you experience nausea, vomiting, diarrhea, chest congestion seek medical attention.

CVSP will continue to monitor and evaluate the status of the institution and visiting for next week.

A. A. TERHUNE
Facility D Captain

[Handwritten: Exhibit ? Douglas Ray / CASE NO. 08CV0408-WQH (BLM) / APRIL 9, 2008]

# Massive flu outbreak hits inmates

**550 SICKENED:** Officials at a state prison near Blythe investigate if two deaths were caused by the illness.

BY JOHN ASBURY AND JOSE ARBALLO JR.
THE PRESS-ENTERPRISE

Prison officials in Blythe are investigating whether the deaths of two inmates are related to a flu outbreak that has sickened nearly 550 prisoners in less than a month.

Chuckawalla Valley State Prison is in lockdown and accepting no more inmates, but Riverside County health officials said Friday that the flu outbreak at the facility near the California-Arizona state line does not pose a health hazard to nearby communities.

This may be the most severe flu outbreak in the history of the state prison system, said Department of Corrections and Rehabilitation spokesman Terry Thornton. Earlier this year, a flu outbreak affected 200 inmates at a prison in Susanville in Northern California, Thornton said.

Since Feb. 23, at least 546 of Chuckawalla's 3,100 inmates have become sick, experiencing flulike symptoms such as fever, nausea and cold sweats, Thornton said. Ten inmates have been hospitalized, including some who were transferred to Riverside County Regional Medical Center in Moreno Valley.

The Chuckawalla prison is divided up into dormitories, with only three of the facilities infected with influenza, Thornton said. Some employees are also sick.

The quarantine means no visitations will be allowed to the 1,500-acre prison and volunteers are being turned away.

One inmate died March 1 and the other two days later, according to state officials. The inmates were not identified, but their ages were 53 and 35. Officials said they have not determined whether the deaths were caused by the flu. State officials declined to disclose where the men died.

Lilly Lopez, assistant administrator of Palo Verde Hospital in Blythe, said two inmates from Chuckawalla, including one of the ones who died, were brought to the Palo Verde emer-

SEE FLU/A9

---

## FLU: Illness spread to Chuckawalla Valley prison from nearby Blythe, where cases spiked recently

CONTINUED FROM A1

gency room complaining of respiratory problems that appeared to be related to the flu.

The inmate who died was admitted into the emergency room several days ago and was transferred to another hospital, where his condition began to deteriorate, Lopez said.

Another inmate arrived at the emergency room Thursday morning and was transferred later that day. Lopez said she did not know that inmate's condition but he is still alive.

Flu symptoms spiked in nearby Blythe — where many of the prison employees live — in mid-February and spread to the prison, said Barbara Cole, director of Riverside County disease control.

The prison employs 500 people in Blythe, who may have Blythe's population is about 22,000.

Assistant City Manager Charles Hull said he was notified about the problems Thursday and was assured that everything was being done to prevent the spread of the illness. He said residents of the desert community are discussing the flu outbreak in the area and know it's a potentially serious matter, but no one is panicking.

"It is more of a wait-and-see situation," said Hull, who became sick with the flu himself two weeks ago. "The entire valley is going through this wave of the flu and it is making its way through the prison."

Hull, the head of the city's emergency services, said city officials are prepared if there is a need for assistance.

All of the inmates affected are in tal's infirmary. Prison officials are sterilizing dining halls and other areas, as well as conducting wellness checks.

Inmates scheduled for parole are also being evaluated and given a list of health precautions to take before they are released.

contributing factor, she said.

"The process of vaccines starts six to eight months ahead of flu season," Cole said. The World Health Organization and the Centers for Disease Control and Prevention predicts which strains of influenza will be active.

"But sometimes another virus shows up that's not included in the vaccine," Cole said.

The Palo Verde Unified School District in Blythe has not seen any more cases of the flu than usual, or had a higher rate of absences, said Jacob Jensen, director of special services for the district.

"As far as I know we haven't seen any more adverse flu than is typical for this time of year," he said.

Staff writers David Olson and Shirin Parsavand contributed to this report.

---

This year's flu season has taken a particularly hard toll on the Inland region, but not as intense as the flu season in 2003. Blythe, where it spiked in February and is now starting to decline, Cole said. It's not unusual to have flu outbreaks heading into early spring, she said.

Influenza and pneumonia deaths are up about 10 percent this year, compared to the same period last year, Cole said. About 16 percent of the deaths during one period this year were caused by the illnesses.

Countywide, health officials have noted a higher number of influenza patients going to hospital emergency rooms.

The flu vaccine being distributed was not an exact match for the virus circulating this year,

[Map caption: Flu outbreak at prison — showing Chuckawalla Valley State Prison, Blythe, San Bernardino County, Riverside County, San Diego County, Imperial County, Moreno Valley, Temecula, Indio. SOURCE: Riverside County / THE PRESS-ENTERPRISE]

thing is to limit exposure. The inmates are very sick, but we don't want to risk other people from being exposed. We'll do everything we can to contain it."

Last year the prison experienced an outbreak of an intestinal virus.

Case 3:08-cv-00408-WQH-BLM    Document 20    Filed 05/06/2008    Page 17 of 18

WILLIAM BAUGH[illegible]
CASE NO. 08CV0408-WQH (BLM)
29 APRIL 2008

THE DESERT SUN

CALIFORNIA

# Overcrowding possibly tied to prison violence

## New incidents come as officials mull early release of thousands

**By Don Thompson**
THE ASSOCIATED PRESS

**SACRAMENTO** — The stabbing attack on four guards at one overcrowded state prison this week and a racially sparked brawl at another mark the type of violence that guards, inmates' attorneys and Gov. Arnold Schwarzenegger have been worried about for years.

The violence comes at a critical juncture for the nation's largest state prison system.

Later this year, a panel of federal judges will consider whether the crowding has become so severe that the state must cap the inmate population or release some prisoners early. Meanwhile, lawmakers are considering a Schwarzenegger proposal to save money for the deficit-ridden state by releasing more than 20,000 inmates before their sentences end.

"For the last two years, we've said something worse than this was inevitable," said Chuck Alexander, executive vice president of the California Correctional Peace Officers Association, referring to this week's prison unrest. "It's just a matter of where and when it's going to hit. In our view, it's a precursor of what's to come."

On Thursday, two inmates armed with homemade knives attacked guards at the California Correctional Institution about 40 miles southeast of Bakersfield. One of the guards remained hospitalized Friday with a skull fracture and stab wounds.

A second attack erupted Friday. A dozen inmates were injured during a brawl in a crowded dormitory at the California Institution for Men in Chino, about 40 miles east of Los Angeles. Prison officials described it as an attack by Hispanic inmates on white prisoners. Five were sent to hospitals, including two with puncture wounds.

"There's more violence. The prisoners are unsafe, and there is less safety for the officers, as well," said Don Specter, director of the nonprofit Prison Law Office in San Rafael.

He is among inmates' rights attorneys asking the panel of three federal judges to order the state to reduce the prisons' population. In an unusual alliance, the prison guards' union has joined the push.

Schwarzenegger opposes a federally mandated population cap. But the Republican governor is proposing the early release of some 22,000 inmates and eliminating about 4,500 prison guard positions to help shave $400 million from the budget of the state corrections department.

Michael Bien, whose San Francisco law firm also is seeking a reduced inmate population, said the early release plan is irresponsible because guards already are working large amounts of overtime and are under mounting stress.

Schwarzenegger spokeswoman Lisa Page said the governor's plan would retain the current guard-to-inmate ratio while freeing space for rehabilitation programs.

"We'll continue to see further reductions in our prison population as we do more to rehabilitate the state's current prisoners and make sure they stay out of prison once they're released," Page said.

In October 2006, Schwarzenegger declared an emergency to allow 8,000 inmates to be sent to private prisons in other states. It was part of an effort to relieve overcrowding that eventually led to a $7.8 billion prison and jail building program.

At the time, he warned that California's overcrowded prisons could explode into violence, leading to the kind of riots that killed 43 in Attica, New York, in 1971.

Senate Majority Leader Gloria Romero, D-Los Angeles, faulted Schwarzenegger for not doing enough since then to reduce crowding, end labor unrest with the prison guards union and increase rehabilitation programs.

"This is the beginning of the long, hot summer," said Romero, one of the Legislature's experts on prison reform. "It does take, sadly and unfortunately, something like this to snap people's necks around to say these are the consequences of overcrowding."

California's 33 prisons have a capacity of roughly 100,000 inmates but hold about 170,000. A commission headed by Republican Gov. George Deukmejian advised Schwarzenegger in 2004 that the prisons could safely hold about 135,000.

CASE NO: 08CV0408-WQH (BLM)   WILLIAM DAUGHTERY   29 APR 2008

# U.S. Department of Justice
## United States Marshals Service

### PROCESS RECEIPT AND RETURN
*See Instructions for "Service of Process by the U.S. Marshal" on the reverse of this form.*

**PLAINTIFF:** WILLIAM J. DAUGHTERY
**COURT CASE NUMBER:** 7VCV408

**DEFENDANT:** DENNIS WILSON
**TYPE OF PROCESS:**

**SERVE** — NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
DENNIS WILSON, SAN DIEGO POLICE DEPT, TEAM 8

**AT** — ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)
S.D. POLICE DEPARTMENT, INTERNAL AFFAIRS DEPT.
1900 BROADWAY, SAN DIEGO CALIFORNIA, 92101

**SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:**
WILLIAM DAUGHTERY
F-79985
P.O. BOX 2349 / D10-112UP
BLYTHE, CA 92226

- Number of process to be served with this Form - 285: **1 (ONE)**
- Number of parties to be served in this case: **4 (FOUR)**
- Check for service on U.S.A.

**SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE** (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):

1. WILSON MAY NOW BE S.D. COUNTY SHERIFF'S DEPUTY.
2. ATTORNEY WIL RUMBLE MAY HAVE CONTACT PHONE NUMBER ATTORNEY.
3. 2ND ATTEMPT AT SERVICE: WILSON HAS LESS THAN 2 YRS SERVICE AS DEPUTY — MAY BE USING MIDDLE NAME. WILSON IS AFRICAN AMER.

**Signature of Attorney or other Originator requesting service on behalf of:** ☒ PLAINTIFF ☐ DEFENDANT
**TELEPHONE NUMBER:**
**DATE:** 4-14-08

---

### SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE

I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted)
- Total Process: 1
- District of Origin No.: 18
- District to Serve No.: 91
- Signature of Authorized USMS Deputy or Clerk
- Date: 4/14/08

I hereby certify and return that I ☐ have personally served, ☒ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☒ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

**Name and title of individual served** (if not shown above):
**Address** (complete only if different than shown above):
☐ A person of suitable age and discretion then residing in the defendant's usual place of abode.
**Date of Service:** 4/23/08
**Time:** am / pm
**Signature of U.S. Marshal or Deputy:**

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or | Amount of Refund |
|---|---|---|---|---|---|---|
| | | | | | | |

**REMARKS:**
04/23/08 - Returned Unexecuted. Attempted service at provided address and the Internal Affairs Department indicated that they have no Dennis Wilson employed with the S.D. Police Department

NOTE

**PRIOR EDITIONS MAY BE USED**    **3. NOTICE OF SERVICE**    **FORM USM-285 (Rev. 12/15/80)**