1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   WILLIAM JOHN DAUGHTERY, CDCR #F- )   Civil No. 08cv0408-WQH (BLM)
     79985,                          )
12                                   )   **REPORT AND RECOMMENDATION FOR**
                         Plaintiff,  )   **ORDER GRANTING DEFENDANTS'**
13   v.                              )   **MOTION FOR SUMMARY JUDGMENT**
                                     )   **[Doc. No. 65] and DENYING**
14   DENNIS WILSON, et al.,          )   **LEMUS' MOTION FOR SUMMARY**
                                     )   **JUDGMENT [Doc. No. 82] and**
15                       Defendants. )   **ORDER DENYING PLAINTIFF'S**
                                     )   **MOTION FOR PERSONNEL RECORDS**
16   _____ )   **[Doc. No. 72]**

17

18       This Report and Recommendation is submitted to United States

19   District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and

20   Local Civil Rules 72.1(c) and 72.3(f) of the United States District

21   Court for the Southern District of California.

22       On March 3, 2008, Plaintiff William John Daughtery, a state

23   prisoner proceeding *pro se* and *in forma pauperis*, filed this civil

24   rights suit against Defendants Wilson, Tagaban, Griffin and Lemus

25   (collectively "the Defendants") under 42 U.S.C. § 1983.  Doc. No.

26   1.  On November 19, 2008, Defendants filed a Motion for Summary

27

28

Judgment ("Officers' Mot. for Summ. J.").[1] Doc. No. 65. On January 9, 2009, Defendant Lemus filed an individual Motion for Summary Judgment ("Lemus' Mot. for Summ. J.").[2] Doc. No. 82.

The Court has considered Plaintiff's First Amended Complaint [Doc. No. 25] ("FAC"), the Officers' Motion [Doc. No. 65], Plaintiff's opposition to the Officers' Motion [Doc. No. 95] ("Pl.'s Opp'n to Officers' Mot."), Defendants' reply [Doc. No. 98] ("Reply on Officers' Mot."), Plaintiff's sur-reply [Doc. No. 103] ("Pl.'s Sur-reply on Officers' Mot."), Defendants' sur-reply [Doc. No. 108] ("Officers' Sur-reply"), Lemus' Motion [Doc. No. 82], Plaintiff's opposition to Lemus' Motion [Doc. No. 87] ("Pl.'s Opp'n to Lemus' Mot."), Lemus' reply [Doc. No. 96] ("Reply on Lemus' Mot."), Plaintiff's sur-reply to Lemus' Motion [Doc. No. 106] ("Pl.'s Sur-reply on Lemus' Mot."), and Lemus' Sur-reply [Doc. No. 107] ("Lemus' Sur-reply"). For the following reasons, the Court **RECOMMENDS** that the Officers' Motion be **GRANTED** and Lemus' Motion be **DENIED**.

**BACKGROUND**

**A.   Factual Background**

This case stems from a March 9, 2006 "buy bust" operation by the San Diego Police Department. Aff. of Pl. Opposing Officers'

---

[1]   At that time, Defendant Wilson had not been served with the Complaint, but joined the motion as an "un-served, non-party defendant." See Officers' Mot. for Summ. J. at 8. Wilson was served on January 7, 2009. Doc. No. 79. On February 17, 2009, Wilson filed his answer to Plaintiff's First Amended Complaint [Doc. No. 97] and the Court subsequently granted Wilson's request to properly join the Officers' Motion [Doc. No. 100].

[2]   After the summary judgment motions were filed and again after Defendant Wilson joined in the Officers' Motion, the Court provided Plaintiff with notification of the requirements for opposing summary judgment pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). Doc. Nos. 84 and 101.

1   Mot. for Summ. J. [Doc. No. 103-2] ("Pl.'s Aff.") at 2.[3]   That
2   evening, Detective Lemus was operating in an undercover capacity
3   attempting to purchase narcotics from street level dealers in an
4   area known for drug trafficking activity.  Decl. of Roberto Lemus
5   Supporting Lemus' Mot. for Summ. J. [Doc. No. 82-3] ("Lemus' Decl.")
6   at ¶ 4.  Other members of the San Diego Police Department's Central
7   Narcotics Division were in communication with Lemus and located
8   nearby.   Id.   Lemus approached Plaintiff and purchased "rock"
9   cocaine from him for twenty dollars.  Id. ¶ 5.  Lemus then walked
10  away and communicated a description of Plaintiff to the other
11  officers.  Id. ¶¶ 5-6.  Lemus states that he did not lose sight of
12  Plaintiff until he saw a marked police car approach Plaintiff.  Id.
13  ¶¶ 7-8.

14      The parties agree that the officer who arrived and first
15  contacted Plaintiff was Officer Wilson.   FAC at 4; Reply on
16  Officers' Mot., Ex. E [Doc. No. 98-3]("Ct. Appeal Order")[4] at 6.
17  Wilson took Plaintiff to the ground and, with his arm around
18  Plaintiff's throat, ordered Plaintiff to spit out what was in his
19  mouth.  FAC at 4; Ct. Appeal Order at 6-7.  Plaintiff refused to do
20  so.  Ct. Appeal Order at 7.  Shortly thereafter, Officer Tagaban
21  arrived and struck Plaintiff in the shoulder repeatedly with her
22  flashlight.  Id.; FAC at 4-5.  The officers subsequently arrested
23  Plaintiff.  Id.

24

25  ─────────────────

26      [3]     Due to some discrepancies in the pagination of documents, the Court
27  cites to the page numbers affixed to the top of the page by the Court's
    electronic filing system.

28      [4]     As discussed *supra*, the Court grants Defendants' request to take
    judicial notice of the Court of Appeal's opinion.

1       **1.    Plaintiff's Contentions**

2       Plaintiff contends that "without giving any orders or any
3   preamble, Wilson exited his car, walked up to [Plaintiff] and
4   grabbed [him] by the front of the throat."   Pl.'s Aff. at 2.
5   According to Plaintiff, Wilson "exerted strong pressure" on
6   Plaintiff's throat and then "adjusted his grip and moved to a
7   position where he continued choking [Plaintiff] from behind."   Id.
8   Wilson then kicked Plaintiff's legs out from under him and tripped
9   him to the ground.   Id.   Plaintiff states that he "neither provoked,
10  instigated or resisted the attack."   Id. at 4.   Yet, despite his
11  complete submission, Wilson demanded he spit out any possible
12  evidence he had in his mouth and banged Plaintiff's forehead on the
13  concrete sidewalk for approximately two minutes.   Id. at 2-3.

14      At that point, Tagaban arrived in full uniform and driving a
15  marked police vehicle.   Id. at 3.   Plaintiff submits that Tagaban
16  immediately began to beat his head and left shoulder approximately
17  twelve times with a large metal flashlight and that Officers Wilson
18  and Tagaban shouted "spit it out" at him during the alleged beating.
19  Id.   Thereafter, Plaintiff "lost consciousness from the combined
20  beating and choking."   Id.   He also contends he suffered serious
21  injury to his forehead, knees, elbows, left shoulder and neck.   Id.
22  at 2.

23      During this altercation, Plaintiff asserts that Lemus and
24  Griffin were near the opposite side of the intersection, but neither
25  took any action "to halt the vicious beating."   Id. at 3-4.

26      **2.    Defendants' Contentions**

27      According to Defendants, upon arriving at the scene, Wilson
28  used his car to block Plaintiff's movement and ordered him to stop

1  but Plaintiff refused to do so.  Ct. Appeal Order at 6.  Wilson

2  observed that Plaintiff had quickened his pace and appeared to be

3  chewing on something so Wilson grabbed Plaintiff and took him to the

4  ground.  Id.  Wilson placed his arm around Plaintiff's neck so that

5  he could apply a carotid restraint and disarm Plaintiff if he had

6  a weapon (Plaintiff's hands were underneath him at that time).  Id.

7  Because Wilson believed Plaintiff was chewing drugs in an attempt

8  to destroy evidence, Wilson ordered Plaintiff to spit them out.  Id.

9  at 6-7.

10      When Tagaban arrived, she saw that Plaintiff was resisting

11  arrest and that she could not see his hands so she ordered him to

12  put his hands behind his back.  Id. at 7.  "To distract him into

13  complying with her commands," she twice struck him on the shoulder

14  with her flashlight.  Id.  When he refused to comply, she struck him

15  several more times.  Id.  Plaintiff then spit out a chewed plastic

16  bindle but still refused to put his hands behind his back so Tagaban

17  struck him two more times.  Id.  The officers were then able to

18  handcuff Plaintiff.  Id.  They subsequently pried from Plaintiff's

19  hand a prerecorded $20 bill used by Lemus in the drug transaction.

20  Id.

21  **B.  Procedural History**

22      Plaintiff was charged with one count of selling or furnishing

23  a controlled narcotic substance and one count of possession or

24  purchase of cocaine base for sale.  Lodgment of Evid. Supporting

25  Officers' Mot. for Summ. J., Ex. A ("Criminal Compl.") at 5.

26  Plaintiff filed a pre-trial motion to suppress evidence under

27  California Penal Code § 1538.5 "for certain tangible and intangible

28  things seized" from him without a warrant and in violation of the

1   Fourth Amendment.  Id., Ex. B ("Order Denying Mot. to Suppress") at

2   9.  The matter was fully briefed and the San Diego County Superior

3   Court conducted a two-day hearing.  Id.  During the hearing, four

4   officers from the San Diego Police Department testified and

5   presented the prosecution's theory of the case.  Id.  Plaintiff and

6   four other witnesses, including an eye-witness to the alleged

7   beating, also testified and they presented the Plaintiff's theory.

8   Id.; Pl.'s Aff. at 5.  The court made crucial credibility determina-

9   tions and then denied the motion to suppress evidence in a written

10  opinion.  Order Denying Mot. to Suppress at 9-13.  Plaintiff

11  subsequently was found guilty of both counts and sentenced to a term

12  of eight years in prison.  Ct. Appeal Order at 4-5.

13      Plaintiff appealed to the California Court of Appeal, Fourth

14  Appellate District, Division One challenging the denial of the

15  section 1538.5 motion to suppress evidence and a related motion in

16  limine.  Id.  The court affirmed the judgment.  Id. at 18.

17      Plaintiff filed the instant civil rights case on March 3, 2008.

18  Doc. No. 1. In his FAC, Plaintiff alleges that on March 9, 2006,

19  Officers Wilson and Tagaban violated his constitutional rights when

20  they used excessive force to arrest him.  FAC at 4-6.  He further

21  alleges that Sergeant Griffin and Detective Lemus were "integral

22  participant[s]" in the allegedly unlawful beating because they

23  witnessed the attack but did nothing to intervene.  Id. at 2, 5.

### LEGAL STANDARD

25      Summary judgment is appropriate if there is no genuine issue

26  as to any material fact, and the moving party is entitled to a

27  judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving

28  party has the initial burden of demonstrating that summary judgment

1    is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The
2    burden then shifts to the opposing party to provide admissible
3    evidence beyond the pleadings to show that summary judgment is not
4    appropriate. Id. at 322-24. The opposing party "may not rest upon
5    mere allegation or denials of his pleading, but must set forth
6    specific facts showing that there is a genuine issue for trial."
7    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "A fact
8    or issue is genuine 'if the evidence is such that a reasonable jury
9    could return a verdict for the nonmoving party.'" Villiarimo v.
10   Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting
11   Anderson, 477 U.S. at 248). The court may not weigh evidence or
12   make credibility determinations on a motion for summary judgment;
13   rather, the inferences to be drawn from the underlying facts must
14   be viewed in the light most favorable to the nonmoving party.
15   Anderson, 477 U.S. at 255; Fairbank v. Wunderman Cato Johnson, 212
16   F.3d 528, 531 (9th Cir. 2000).

17       Section 1983 imposes two essential proof requirements upon a
18   claimant: (1) that a person acting under color of state law
19   committed the conduct at issue, and (2) that the conduct deprived
20   the claimant of some right, privilege, or immunity protected by the
21   Constitution or laws of the United States. See 42 U.S.C. § 1983;
22   Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other
23   grounds by Daniels v. Williams, 474 U.S. 327, 328 (1986). A person
24   deprives another "of a constitutional right, within the meaning of
25   section 1983, if he does an affirmative act, participates in
26   another's affirmative acts, or omits to perform an act which he is
27   legally required to do that causes the deprivation of which [the
28   plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th

1    Cir. 1978).  "The inquiry into causation must be individualized and
2    focus  on  the  duties  and  responsibilities  of  each  individual
3    defendant  whose  acts  or  omissions  are  alleged  to  have  caused  a
4    constitutional deprivation."  <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th
5    Cir. 1988); <u>Berg v. Kincheloe</u>, 794 F.2d 457, 460 (9th Cir. 1986).

6                                **<u>DISCUSSION</u>**

7        In  the  Officers'  Motion,  Defendants  argue  that  judgment  in
8    their favor is warranted on three grounds.  Officers' Mot. for Summ.
9    J.[5] at 9-11.   First, Defendants contend that the merits of Plain-
10   tiff's  constitutional  claims  were  adjudicated  in  the  California
11   Superior  Court  and  the  California  Court  of  Appeal.   <u>Id.</u> at 9-10.
12   Thus, Defendants argue that Plaintiff is barred from relitigating
13   his constitutional claims in this case under the doctrines of issue
14   and claim preclusion.  <u>Id.</u>  Second, Defendants submit that Plain-
15   tiff's Fourteenth Amendment claim fails as a matter of law because
16   the  claim  should  have  been  pled  and  analyzed  under  the  Fourth
17   Amendment.  <u>Id.</u> at 10-11.  Finally, Defendants argue that they are
18   entitled  to  qualified  immunity  given  the  substantial  authority
19   granted to police officers at the scene of an arrest.  <u>Id.</u> at 11.
20       In  his  individual  motion,  Lemus  contends  that  Plaintiff's
21   failure to intercede claim fails as a matter of law because Lemus
22   was  not  present  during  the  alleged  use  of  excessive  force  and,
23   therefore, did not have the opportunity to intercede.  Lemus' Mot.
24   for Summ. J. at 5.

25

26

_____

27        [5]     In citing to the "Officers' Mot. for Summ. J." or "Lemus' Mot. for
     Summ. J.," the Court is indicating the respective memoranda accompanying these
28   motions.

**A.   <u>Judicial Notice</u>**

As an initial matter, Defendants request that the Court take judicial notice under Federal Rule of Evidence 201 of the "Complaint and Information, Order Denying Defendant's Motion to Suppress, Jury Verdict and Sentencing Order in <u>People v. Daughtery</u>, California Superior Court Case No. SDC 197549, and the Court of Appeal Opinion regarding that California criminal case and proceeding." Defs.' Req. for Jud. Notice Supporting Officers' Mot. for Summ. J. at 1. Generally, courts "will not consider facts outside the record developed before the district court." <u>United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992). However, courts "may take notice of proceed-ings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." <u>Id.</u> (quoting <u>St. Louis Baptist Temple, Inc. v. FDIC</u>, 605 F.2d 1169, 1172 (10th Cir. 1979) (internal quotations omitted)). Because the issues and claims adjudicated in the state court are "directly related" to the instant case, the Court takes judicial notice of the state court proceedings in <u>People v. Daughtery</u>, California Superior Court Case No. SCD 197549, and <u>People v. Daughtery</u>, Court of Appeal Case No. D051313. <u>See Holder v. Holder</u>, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of prior state court proceedings in determining whether to apply issue and claim preclusion).

**B.   <u>Issue and Claim Preclusion as to Plaintiff's Claim of Exces-sive Use of Force During the March 9, 2006 Arrest</u>**

In <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989), the Supreme Court held that an excessive force claim arising in the context of

1    an arrest "is most properly characterized as one invoking the

2    protections of the Fourth Amendment, which guarantees citizens the

3    right 'to be secure in their persons . . . against unreasonable .

4    . . seizures.'"  Accordingly, the Court held that "all claims that

5    law enforcement officers have used excessive force-deadly or not-

6    in the course of an arrest . . . should be analyzed under the Fourth

7    Amendment and its 'reasonableness' standard."  Graham, 490 U.S. at

8    395 (emphasis in original).  The Court went on to explain that,

9    "[a]s in other Fourth Amendment contexts, however, the reasonable-

10   ness' inquiry in an excessive force case is an objective one: the

11   question is whether the officers' actions are 'objectively reason-

12   able' in light of the facts and circumstances confronting them,

13   without regard to their underlying intent or motivation."  Id. at

14   397.  In his FAC, Plaintiff contends that Defendants used excessive

15   force in the course of his arrest in violation of his Fourth

16   Amendment rights.  FAC at 4.  Thus, in evaluating whether the

17   doctrines of issue and/or claim preclusion apply, this Court must

18   determine whether the California state courts rendered a final

19   judgment on the "reasonableness" of the force used in effectuating

20   Plaintiff's arrest under the Fourth Amendment.

21       Generally, federal courts afford the same full faith and credit

22   to state court judgments as would apply in the state's own courts.

23   28 U.S.C. § 1738; Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466

24   (1982).  In doing so, federal courts utilize the doctrines of issue

25   preclusion and claim preclusion:

26           Under the doctrine of claim preclusion, a final judgment
             forecloses 'successive litigation of the very same claim,
27           whether or not relitigation of the claim raises the same
             issues as the earlier suit.'   Issue preclusion, in
28           contrast, bars 'successive litigation of an issue of fact

                                    -10-                    08cv0408-WQH (BLM)

1    or law actually litigated and resolved in a valid court
     determination essential to the prior judgment,' even if
2    the issue recurs in the context of a different claim.[6]

3   Taylor v. Sturgell, 128 S. Ct. 2161, 2171 (2008) (internal citations

4   omitted).  "Application of both doctrines is central to the purpose

5   for which civil courts have been established, the conclusive

6   resolution of disputes within their jurisdictions."    Montana v.

7   United States, 440 U.S. 147, 153 (1979).  Because federal courts

8   must give preclusive effect to state court judgments whenever the

9   state courts would do so, it necessarily follows that state law

10  governs the application of claim preclusion and issue preclusion.

11  See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81

12  (1984); Holcombe v. Hosmer, 477 F.3d 1094, 1097 (9th Cir. 2007).

13  Accordingly, this Court looks to California law to determine the

14  applicability of issue and claim preclusion to the instant action.

15      **1.    Issue Preclusion**

16      The California courts apply issue preclusion where the

17  following five factors are met: (1) the issue to be precluded is

18  identical to one decided in a prior proceeding, (2) the issue was

19  actually litigated, (3) the issue was necessarily decided, (4) the

20  decision in the prior proceeding was final and on the merits, and

21  (5) the party against whom preclusion is sought was a party, or in

22  privity with a party, to the former proceeding.    People v. Garcia,

23  39 Cal. 4th 1070, 1077 (2006) (citing Lucido v. Superior Court, 51

24

25      [6]     The Supreme Court has explained that the terms "issue preclusion" and
26  "claim preclusion" "have replaced a more confusing lexicon."   Taylor v. Sturgell,
    128 S. Ct. 2161, 2171 n.5 (2008).   Claim preclusion refers to the doctrine
27  formerly known as "res judicata" and issue preclusion refers to the doctrine
    formerly known as "collateral estoppel."   Res judicata also has been used as a
28  general term encompassing both doctrines.   See Allen v. McCurry, 449 U.S. 90, 94
    n.5 (1980).

1  Cal. 3d 335, 341 (1990)); <u>McCutchen v. City of Montclair</u>, 73 Cal.

2  App. 4th 1138, 1145 (4th Dist. 1999).  Here, Plaintiff litigated his

3  Fourth Amendment excessive force claim in a section 1538.5 motion to

4  suppress evidence before the San Diego County Superior Court.  Order

5  Denying Mot. to Suppress at 9.  Issue preclusion bars relitigation

6  of Plaintiff's Fourth Amendment claim in this case because the five

7  requirements are satisfied.

8         **a.**  **Plaintiff's Fourth Amendment claim is identical to**

                **the Fourth Amendment issue decided in the state**

9                  **court proceeding**

10      The first factor requires that the issue raised in the instant

11  federal proceeding be the same as that decided during the suppres-

12  sion hearing.  <u>See</u> <u>Garcia</u>, 39 Cal. 4th at 1077.  In state court,

13  Plaintiff argued that Officers Wilson and Tagaban used excessive

14  force in the course of arresting Plaintiff and obtaining evidence

15  from his person and, therefore, violated his Fourth Amendment

16  rights.  Order Denying Mot. to Suppress at 9-10; Ct. Appeal Order at

17  11-13.  In his FAC, Plaintiff again contends that Officers Wilson

18  and Tagaban used excessive force in the course of his arrest in

19  violation of his Fourth Amendment rights. [7]  FAC at 4.  Thus, it

20  appears this factor is satisfied.

21      Nevertheless, Plaintiff submits that the issues are not

22  identical because the criminal court applied a "shocks the con-

23  scious" standard, whereas this Court must apply the "reasonableness"

24  —————————————

25      [7]    While Plaintiff does not mention the seizure of evidence in his FAC, the alleged excessive force is the same.  That is, in both proceedings, Plaintiff complains about the excessive force used by the officers to arrest him and to

26  obtain evidence from his person. FAC at 4-7; Order Denying Mot. to Suppress at 9-13; Ct. Appeal Order at 11-13.  In state court, Plaintiff argues that the illegal conduct should result in the suppression of evidence (drugs from his

27  mouth and money from his hand) whereas in the federal court he argues that it constitutes a violation of his civil rights.  However, both cases involve the

28  same conduct and the same Fourth Amendment excessive force analysis.  <u>Id.</u>

1   standard.  Id. at 6.  Plaintiff is incorrect.  The record before

2   this Court establishes that the San Diego County Superior Court and

3   the California Court of Appeal both adjudicated the officers' use of

4   force according to the Fourth Amendment "reasonableness" standard.

5   In its order denying Petitioner's motion to suppress, the superior

6   court applied the standard set forth in People v. Cappellia, 208

7   Cal. App. 3d 1331, 1338 (4th Dist. 1989), which relies on Supreme

8   Court authority directing courts to consider whether the force used

9   was "'reasonable' under the circumstances."  Order Denying Mot. to

10  Suppress at 11.  The Court of Appeal likewise relied on Cappellia in

11  framing its analysis, explaining that "[t]o be constitutional, the

12  force used to recover evidence from a person must be reasonable

13  under the circumstances."  Ct. Appeal Order at 12.  Plaintiff's

14  argument, therefore, fails.[8]

15        In sum, because the factual issues and the applied standards

16  of analysis are identical, the Court determines that the issue

17  identity requirement is satisfied in this case.

18              b.  **Plaintiff's Fourth Amendment claim was actually**
                    **litigated**
19

20        The Court next must consider whether Plaintiff's claim was

21  actually litigated during the suppression hearing.  See Garcia, 39

22

23 ───────────────

       [8]    While it is unclear from his briefing, Plaintiff may have concluded
24  that the trial court applied the "shocks the conscience" standard because it
    cited to People v. Cappellia, which discusses the fact that courts, historically,
    did apply that standard.  See Cappellia, 208 Cal. App. 3d at 1337.  However, the
25  Cappellia court subsequently confirms that "modern Supreme Court decisions are
    grounded on whether the search was 'reasonable' under the circumstances."  Id.
26  at 1338.  This is because the Supreme Court has determined that excessive force
    claims arising in the context of an arrest should be characterized as invoking
27  the protections of the Fourth Amendment (which applies a "reasonableness"
    standard) as opposed to more generalized "substantive due process" protections
    (which are evaluated using the "shocks the conscience" standard).  Graham, 490
28  U.S. at 393-94.

                                    -13-                    08cv0408-WQH (BLM)

1   Cal. 4th at 1077.   Under California law, an issue is "actually
2   litigated" when it is "properly raised, . . . submitted for
3   determination, and is determined."  Murphy v. Murphy, 164 Cal. App.
4   4th 376, 400 (1st Dist. 2008) (quoting Barker v. Hull, 191 Cal. App.
5   3d 221, 226 (1st Dist. 1987)).   When the specific question presented
6   is whether the doctrine of issue preclusion can be applied in a
7   civil case to issues determined as part of a prior section 1538.5
8   ruling, the Court also should consider whether the prior conviction
9   was for a serious offense such that the defendant was motivated to
10  fully litigate the charges.   McGowan v. City of San Diego, 208 Cal.
11  App. 3d 890, 894-895 (4th Dist. 1989).   An accused may plead guilty
12  to a traffic offense, for instance, because it would be more trouble
13  to defend against the charges than to suffer the penalty.   See
14  Leader v. State, 182 Cal. App. 3d 1079, 1087 (2d Dist. 1986).   On
15  the other hand, offenses punishable by imprisonment generally should
16  be considered serious offenses.   Id.

17      Here, Plaintiff argues that his claim of "excessive force as
18  violative [sic] of personal bodily integrity or right to be free
19  from harm was not 'actually litigated.'"   Pl.'s Opp'n to Officers'
20  Mot. at 15 (emphasis in original).   However, the superior court's
21  order reflects that Plaintiff properly raised a Fourth Amendment
22  excessive force challenge in a section 1538.5 motion to suppress
23  evidence.   Order Denying Mot. to Suppress at 9.   Both parties fully
24  briefed the issue and the state court conducted a two-day hearing,
25  involving  testimony from four police officers, Plaintiff, and four
26  other witnesses on Plaintiff's behalf.   Id.   Plaintiff does not
27  refute this summary of the state court proceedings, nor has he
28  presented any admissible evidence that was not available to the

-14-                                    08cv0408-WQH (BLM)

1    superior court which would have been material to its determination.

2    Furthermore, Plaintiff unquestionably had the motivation to fully

3    litigate the issue during the hearing because Plaintiff was facing

4    serious felony charges carrying significant potential prison

5    sentences and evidence obtained by use of excessive force would have

6    been suppressed, see Cal. Penal Code § 1538.5(d).  Finally, the

7    court actually determined the issue when it denied Plaintiff's

8    motion to suppress evidence, concluding that "[u]nder the circum-

9    stances, the officers used reasonable force in obtaining the cocaine

10   from the defendant's mouth and the $20 bill from his closed fist."

11   Order Denying Mot. to Suppress at 11; Ct. Appeal Order at 9, 13

12   (trial court did not err when it concluded that Wilson and Tagaban

13   did not use excessive force when arresting and searching Plaintiff).

14   Thus, the Court concludes that the issue of whether the officers

15   used excessive force against Plaintiff in violation of the Fourth

16   Amendment was "actually litigated."

17            c.   **Plaintiff's Fourth Amendment claim was necessarily
                    decided**

18

19        The parties do not dispute that the excessive force issue was

20   necessarily decided during the suppression hearing and the Court

21   concurs in this assessment.  An issue is "necessarily decided" when

22   resolution of that issue is "not 'entirely unnecessary' to the

23   judgment in the prior proceeding." Murphy, 164 Cal. App. 4th at 400

24   (quoting Castillo v. City of Los Angeles, 92 Cal. App. 4th 477, 482

25   (2d Dist. 2001)).  The necessity of determining the excessive force

26   issue in this case is apparent because any evidence obtained through

27   the use of excessive force would have been suppressed and, thus,

28   rendered inadmissable during Plaintiff's criminal trial.  See Cal.

1    Penal Code § 1538.5(d).   Thus, a final determination of the alleged

2    constitutional violation was necessary for the parties to proceed in

3    the criminal case.

4             **d.**   **There was a final judgment on the merits of Plain-**
                       **tiff's Fourth Amendment claim in state court**

5

6        The initial question presented by this prong is whether a

7    ruling on a motion to suppress evidence may constitute a final

8    judgment on the merits for purposes of issue preclusion.   In <u>Allen</u>

9    <u>v. McCurry</u>, 449 U.S. 90 (1980), the Supreme Court was presented with

10    facts very similar to those presented in this case and answered that

11    question in the affirmative.   Before his criminal trial in state

12    court, McCurry filed a motion to suppress evidence, alleging that

13    officers violated the Fourth Amendment by conducting an unlawful

14    search and seizure.   <u>Allen</u>, 449 U.S. at 91-92.   The motion was

15    partially denied.   <u>Id.</u>   McCurry subsequently filed a federal civil

16    action pursuant to 42 U.S.C. § 1983 against several of the arresting

17    officers alleging, among other things, that the officers conducted

18    an unconstitutional search and seizure.   <u>Id.</u> at 92.   The district

19    court granted summary judgment, holding that collateral estoppel

20    (issue preclusion) "prevented McCurry from relitigating the

21    search-and-seizure question already decided against him in the state

22    courts." <u>Id.</u> at 92-93.   Following a reversal by the appellate

23    court, the Supreme Court concluded that litigation of an issue

24    during a state suppression hearing may, in fact, preclude

25    relitigation of the same issue in a subsequent federal civil rights

26    action.   <u>Id.</u> at 93, 103-05.

27        California law, to which this Court looks for guidance in

28    applying the doctrines of issue and claim preclusion, <u>see</u> <u>Migra</u>, 465

1  U.S. at 82 and Holcombe, 477 F.3d at 1097, also provides that a

2  suppression hearing may constitute a final proceeding such that a

3  litigant may be barred from relitigating in a subsequent civil suit

4  a claim decided on a motion to suppress, McGowan, 208 Cal. App. 3d

5  at 895[9].   In applying California law, the Ninth Circuit has cited

6  McGowan with approval.   See Ayres v. City of Richmond, 895 F.2d

7  1267, 1272 (9th Cir. 1990) (applying McGowan and affirming applica-

8  tion of issue preclusion to bar relitigation of Fourth Amendment

9  claim raised in a section 1538.5 suppression hearing).

10      The question then is whether the trial court's ruling on

11  Plaintiff's excessive force claim during the suppression hearing in

12  this case constituted a final decision on the merits for issue

13  preclusion purposes.   Under California law, a "final judgment" is a

14  decision immune from reversal or amendment.   People v. Cooper, 149

---

16  [9]      Plaintiff maintains erroneously that McGowan prevents application of
issue preclusion to this case.  See Pl.'s Opp'n to Officers' Mot. at 8, 14, 16.
17  However, the case holds otherwise.  Like Plaintiff, McGowan claimed that San
Diego police officers violated his Fourth Amendment rights and filed a motion to
18  suppress evidence under California Penal Code section 1538.5.  McGowan, 208 Cal.
App. 4th at 894-95.  The motion was denied.  Id. at 895. McGowan subsequently
19  filed a civil rights case under 42 U.S.C. § 1983.  Id.   The McGowan court
evaluated the general principles supporting application of issue preclusion and
20  held that "the doctrine of [issue preclusion] may apply to subsequent civil
actions based upon rulings pursuant to section 1538.5 motions to suppress
21  evidence."  Id.  Though Plaintiff is correct that the McGowan court ultimately
did not find that McGowan's suppression hearing precluded relitigation in his
22  subsequent civil case, the facts of McGowan are distinguishable from the instant
case.   During the suppression hearing, McGowan alleged that defendants used
23  excessive force in drawing his blood after his arrest.  Id. at 894.  In the civil
case, he alleged causes of action for false arrest, false imprisonment, assault
and battery.  Id. at 893.  The McGowan court determined that the issues raised
24  in the civil case were not identical to those adjudicated during the suppression
hearing because McGowan's allegations in the civil case also involved actions
25  defendants took before and after the blood draw (and for which a different
standard of review would be applied).  See id. at 893-97.  Here, Plaintiff raised
26  excessive force claims in both courts and, in both instances, the claims pertain
to the same incident (application of force during his arrest and the retrieval
27  of the cocaine from his mouth and money from his hand).  As discussed in more
detail in the body of this order, this Court applies the same reasonableness
standard applied by the trial court.  Accordingly, this Court rejects Plaintiff's
28  argument that McGowan mitigates against application of issue preclusion in this
case.

1   Cal. App. 4th 500, 521 (Cal. Ct. App. 2007).  "Factors supporting a

2   conclusion that a decision is final for [issue preclusion]

3   purpose[s] are 'that the parties were fully heard, that the court

4   supported its decision with a reasoned opinion, [and] that the

5   decision was subject to appeal or was in fact reviewed on appeal.'"

6   People v. Meredith, 11 Cal. App. 4th 1548, 1557 n.5 (2d Dist. 1993).

7   Here, the parties had a full and fair opportunity to be heard at the

8   two-day suppression hearing and the state court issued a reasoned

9   opinion.  See Order Denying Mot. to Suppress at 9-13.  Plaintiff

10  appealed the judgment and specifically challenged the trial court's

11  ruling on his motion to suppress evidence.  Ct. Appeal Order at 5.

12  In its decision affirming the judgment, the California Court of

13  Appeal thoroughly analyzed the officers' use of force during

14  Plaintiff's arrest and the collection of evidence.    Id. at 4-18.

15  Thus, the Court finds that the state court's decision on the merits

16  denying Plaintiff's Fourth Amendment claim was final and bars

17  relitigation of this issue.

18          **e.   The party against whom issue preclusion is as-
                  serted was a party to the prior state court pro-**
19                **ceeding**

20          Defendants seek to preclude Plaintiff from relitigating his

21  Fourth Amendment claim of excessive use of force.  Here, Plaintiff

22  does not dispute that he was the defendant in the criminal trial at

23  issue or that he filed the motion to suppress evidence.  The record

24  confirms his participation.  See, e.g., Criminal Compl. at 4; Order

25  Denying Mot. to Suppress at 9-13.  Accordingly, the Court concludes

26  that the identity of the parties requirements has been satisfied.

27

28

1          **f.   Plaintiff's policy arguments do not foreclose**
             **application of issue preclusion to this case**

2

3          In his opposition, Plaintiff argues that even if the require-

4     ments for issue preclusion are satisfied, the Court should not apply

5     issue preclusion because "'considerations of policy or fairness

6     outweigh the doctrine's purposes'" in this case.  Pl.'s Opp'n to

7     Officers' Mot. at 12 (quoting <u>Zevnik v. Superior Court</u>, 159 Cal.

8     App. 4th 76, 82 (2d Dist. 2008)).   However, Plaintiff has not

9     presented any factual evidence suggesting that the state court made

10    an incomplete or unfair decision.  Plaintiff claims to be mentally

11    and physically disabled, but has not provided any admissible

12    evidence showing that his disabilities prevented a fair determina-

13    tion of his constitutional claim in state court.  Pl.'s Sur-reply to

14    Officers' Mot. at 4.   As previously discussed, the state court

15    suppression hearing provided a full and fair opportunity for

16    Plaintiff to litigate his claim.  <u>See</u> Order Denying Mot. to Suppress

17    at 9-13; Supporting Documents to Pl.'s Opp'n to Officers' Mot. [Doc.

18    No. 95-2], Preliminary Hearing Transcript ("Prelim. Hearing Tr.") at

19    60-70[10].  That the state court discredited the testimony of Plain-

20    tiff's witnesses after properly weighing the evidence does not

21    render the proceeding fundamentally unfair.  <u>See</u> Order Denying Mot.

22    to Suppress at 9-13.  Accordingly, the Court finds that Plaintiff

23    has failed to raise any material issues of fact that would justify

24    relitigation of this case.

25         Plaintiff also argues that issue preclusion cannot be applied

26

27          [10]   This portion of the preliminary hearing transcript was read into the
      record as Lemus' testimony for the suppression hearing.  Ct. Appeal Order at 5
28    n.2.  Lemus also apparently provided live testimony.  <u>Id.</u>

in this case because Lemus provided perjured testimony at the suppression hearing in order to ensure Plaintiff's conviction. Supporting Documents to Pl.'s Opp'n to Officers' Mot., Exhibit Explanation at 2 (citing <u>Teitelbaum Furs, Inc. v. Dominion Ins. Co.</u>, 58 Cal. 2d 601, 607 (1962) (noting that collateral estoppel should not be applied where the criminal judgment is subject to collateral attack on the ground that it was obtained through the knowing use of perjured testimony)). Specifically, Plaintiff claims that the "tac tape" transcript shows that "contrary to Officer Lemus' testimony, suspect was out of sight, 'lost' and arrested person (Plaintiff) did not match description of pursued suspect." <u>Id.</u> Additionally, Plaintiff claims Lemus testified at the suppression hearing that he did not lose sight of Plaintiff but then stated in the declaration he provided in conjunction with his motion for summary judgment that he did not see the arrest/assault. <u>Id.</u> at 2-3.

The Court has reviewed Lemus' hearing testimony (which actually was taken during the preliminary hearing and read into the record at the suppression hearing) (Prelim. Hearing Tr. at 52-69), the excerpt of the "tac tape" provided by Plaintiff[11] [Doc. No. 95-2 at 45-47]

---

[11]     Defendants object to the consideration of the "tac tape" transcript on the grounds that it is irrelevant, presents inadmissible hearsay, and does not have proper authentication and foundation. Reply on Officers' Mot. at 2. Initially, the Court finds that the transcript is relevant to Plaintiff's arguments. As to the other objections, the Court notes that it would be an abuse of discretion to refuse to consider evidence offered by a *pro se* plaintiff for the purpose of avoiding summary judgment. <u>See</u> <u>Jones v. Blanas</u>, 393 F.3d 918, 930-31 (9th Cir. 2004) (reversing and remanding with instructions to consider evidence offered by the *pro se* plaintiff in his objections to findings and recommendations); <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (reversing and remanding for consideration of the *pro se* plaintiff's verified motion as an affidavit in opposition to summary judgment). In order to survive a motion for summary judgment, a *pro se* party is not required to produce evidence in a form that will be admissible at trial and need only offer evidence that may be transformed into admissible evidence at trial. <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036-37 (9th Cir. 2003); <u>cert. denied</u>, 541 U.S. 937 (2004) (holding that the district court properly considered a diary which defendants moved to strike as inadmissible hearsay because "[a]t the summary judgment stage, we do not focus

("Tac Tape Tr."), and the declaration Lemus provided in conjunction with his motion for summary judgment ("Lemus' Decl.) and does not find them inconsistent.  At the suppression hearing, Lemus testified that he identified the person who sold him the drugs as a black male wearing a dark jacket and walking east on 1400 J Street.  Prelim. Hearing Tr. at 55.  Lemus explained that after the sale, he walked away from Plaintiff, but did not lose sight of him.  He was approximately one and a half blocks away when the uniformed officers, or "scoop units," arrived to arrest Plaintiff.  Id. at 55-67.  Another officer subsequently picked up Lemus and drove him past the arrest scene where he identified Plaintiff as the person who sold him drugs.  Id.

The tac tape transcript is a two page document apparently containing "conversation recorded on March 9, 2006 at 1949 on channel 32."  Tac Tape Tr. at 46-47.  It sets forth statements made by three police officers: Sgt. Griffin, Off. Chavez, and Off. Spears.  Id.  The beginning part of the transcript indicates that these officers lost sight of the suspect, whereas the end of the transcript reflects that someone is being arrested by other officers.  Id.  The transcript does not appear to contain state-ments made by Lemus or to reflect his observations.  Id.

Lemus' declaration in support of his summary judgment motion states that he walked away from Plaintiff, but continued to observe

---

on the admissibility of the evidence's form.  We focus instead on the admissibility of its contents.").  Therefore, Defendants' objections are overruled for present purposes and the Court will consider the tac tape transcript.  For the same reasons, the Court also overrules Defendants' other objections to Plaintiff's evidence.  Reply on Officers' Mot. at 2-3; Reply on Lemus' Mot. at 2.  The Court has considered Plaintiff's evidence and given it appropriate weight.

1   him until a marked police car approached Plaintiff.  Lemus' Decl. ¶¶

2   7-8.  Once Lemus "felt confident that the officer did contact

3   [Plaintiff]," he walked away and was picked up by an unmarked car

4   and driven back to the scene of the arrest.  Id. ¶ 8.  Lemus states

5   that he "did not observe any take down or other use of force against

6   Mr. Daugherty. [He] did not observe or witness any physical contact,

7   take down or use of force by Officer Wilson or Officer Tagaban."

8   Id. ¶ 10.

9        The three exhibits are not inconsistent.  Lemus' testimony and

10  declaration both describe Lemus' efforts to ensure that the correct

11  person was arrested by observing the suspect until another officer

12  arrived.   The tac tape does not present Lemus' observations or

13  impact his credibility in any way.   Having considered the tran-

14  scripts and declaration in their entirety and in light of the

15  context presented, the Court finds that Plaintiff has not satisfied

16  his burden of showing a material factual inconsistency that would

17  support Plaintiff's perjury allegation and prevent application of

18  issue preclusion to this case.

19       Furthermore, even if the evidence Plaintiff presents did show

20  that Lemus perjured himself in regard to whether or not he directly

21  witnessed Plaintiff's arrest, it would not be a sufficient basis for

22  overcoming the application of issue preclusion because whether or

23  not Lemus witnessed the arrest was irrelevant to the trial court's

24  excessive force determination.   Plaintiff is correct that the

25  California Supreme Court has held that "a criminal judgment that is

26  subject to collateral attack on the ground, for example, that it was

27  obtained through the knowing use of perjured testimony... is not res

28  judicata in a subsequent action."  Teitelbaum Furs, 58 Cal. 2d at

1   608.   But, in ruling on the excessive force issue in this case, the

2   trial court weighed the credibility of Officers Wilson and Tagaban

3   on the one hand against that of Plaintiff and his witnesses on the

4   other hand.   Order Denying Mot. to Suppress at 11-13.   The trial

5   court did not factor in Lemus' testimony that he saw the arrest, nor

6   could it have because Lemus did not elaborate at all as to whether

7   he observed the use of force.   See Prelim. Hearing Tr. at 67.   As

8   such, Plaintiff has not presented a genuine factual dispute as to

9   whether the suppression ruling was "obtained through the knowing use

10  of perjured testimony," Teitelbaum Furs, 58 Cal. 2d at 608.   Stated

11  differently, the trial court's ruling is not subject to collateral

12  attack on this basis because even if Plaintiff's perjury claim was

13  true, the alleged perjured testimony did not impact the trial

14  court's conclusion that Defendants did not use excessive force.   Id.

15       Accordingly, the Court finds that Plaintiff received a full and

16  fair opportunity to litigate his claim in state court, the five

17  requirements for applying issue preclusion have been met, and there

18  are no policy considerations which would make it inappropriate to

19  apply issue preclusion.   Therefore, the Court holds that the issue

20  preclusion doctrine bars relitigation of Plaintiff's Fourth

21  Amendment excessive use of force claim.

22       **2.   Claim Preclusion**

23       To the extent Plaintiff argues he may relitigate his excessive

24  use of force claim under an "alternative" constitutional right, any

25  such claim is barred by the claim preclusion doctrine.   See Pl.'s

26  Opp'n to Officers' Mot. at 12; Pl.'s Sur-reply to Officers' Mot. at

27  6-7.   In applying the doctrine of claim preclusion, "California has

28  consistently applied the 'primary rights' theory, under which the

invasion of one primary right gives rise to a single cause of action." Branson v. Sun Diamond Growers, 24 Cal. App. 4th 327, 340 (3d Dist. 1994) (quoting Slater v. Blackwood, 15 Cal. 3d 791, 795 (1975)) (internal quotations omitted). Under the "primary rights theory," the "'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." Id. at 340-41 (internal citations omitted). "If the 'primary right' sought to be vindicated in a subsequent litigation is the same as that in an earlier suit, the second action will be claim precluded under California law." Maldonado v. Harris, 370 F.3d 945, 952 (9th Cir. 2004) (citing Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 904 (2002)).

Here, Plaintiff has alleged one injury - being subjected to excessive use of force during his arrest - but has raised multiple legal theories for recovery. First, Plaintiff contends that his excessive use of force claim may be divided into two separate claims under the Fourth Amendment: (1) a claim of excessive use of force in violation of his right to be free from unreasonable search and seizure and (2) a claim of excessive use of force in violation of his right to be secure in his person. See, e.g., Pl.'s Sur-reply to Officers' Mot. at 6. However, the primary right sought to be vindicated under each theory - freedom from injury resulting from excessive use of force during arrest - is identical to the claim previously litigated in state court. Second, Plaintiff contends that Defendants Griffin and Lemus violated his Fourth Amendment rights because they "did nothing to halt the illegal acts" of

excessive use of force.  FAC at 2, 5.  But, Plaintiff's failure-to-intercede claim presents yet another Fourth Amendment legal theory upon which he seeks recovery for the same excessive use of force injury.  Although Plaintiff did not raise this legal theory in state court, claim preclusion does not require actual litigation in prior proceedings.  See Holcombe, 477 F.3d at 1097 (citing Migra, 465 U.S. at 83-85).  Because the primary right sought to be vindicated is the same as that in the prior proceedings, claim preclusion bars relitigation of Plaintiff's failure-to-intercede claim in this action.

For the foregoing reasons, the Court concludes that, to the extent Plaintiff attempts to re-frame his excessive force claim under various Fourth Amendment legal theories, these claims are barred by the doctrine of claim preclusion.  Where issue and claim preclusion bar the relitigation of Plaintiff's claims, summary judgment is appropriate.  See Robi v. Five Platters, Inc., 918 F.2d 1439, 1441-42 (9th Cir. 1990) (citing Takahashi v. Bd. of Trustees of Livingston Union Sch. Dist., 738 F.2d 848, 849 (9th Cir. 1986)).  Accordingly, the Court **RECOMMENDS** that the Officers' Motion for Summary Judgment be **GRANTED**.

### 3.   Plaintiff's Rule 56(f) Motion

In his sur-reply, Plaintiff requests that the Court deny the Officers' Motion under Federal Rule of Civil Procedure 56(f) because he "cannot present facts essential to justify [his] Opposition." Pl.'s Sur-reply to Officers' Mot. at 8.  Rule 56(f) provides that the Court may deny a motion for summary judgment "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.

1  R. Civ. P. 56(f).  The party challenging summary judgment through a
2  Rule 56(f) motion "bears the burden of showing 'what facts [he]
3  hopes to discover to raise a material issue of fact.'"  <u>Terrell v.</u>
4  <u>Brewer</u>, 935 F.2d 1015, 1018 (9th Cir. 1991) (quoting <u>Hancock v.</u>
5  <u>Montgomery Ward Long Term Disability Trust</u>, 787 F.2d 1302, 1306 n.1
6  (9th Cir. 1986)).  "The party seeking additional discovery also
7  bears the burden of showing that the evidence sought exists.  Denial
8  of a Rule 56(f) application is proper where it is clear that the
9  evidence sought is almost certainly nonexistent or is the object of
10  pure speculation."  <u>Id.</u> (citing <u>Volk v. D.A. Davidson & Co.</u>, 816
11  F.2d 1406, 1416-17 (9th Cir. 1987)).

12      Plaintiff states that evidence from "potential deponents" and
13  "court transcripts" is necessary to support his Opposition.  Pl.'s
14  Sur-reply to Officers' Mot. at 9.  However, Plaintiff has not
15  specifically identified the facts or evidence he seeks to discover.[12]
16  Nor has Plaintiff demonstrated that the evidence he seeks exists or
17  that he anticipates being able to locate the "potential deponents"
18  and secure their cooperation and testimony within a reasonable time
19  frame.  Because Plaintiff has failed to meet his burden to justify
20  an extension of discovery, the Court **RECOMMENDS** that his Rule 56(f)
21  motion be **DENIED**.

22  C.  <u>**Lemus' Motion for Summary Judgment**</u>

23      In addition to joining in the Officers' Motion, Defendant Lemus

24  ──────────

25  [12]    Petitioner seems to argue that additional transcripts or personnel
    records would bolster his perjury argument against Defendant Lemus.  <u>See</u> Exhibit
    Explanation at 2.  As previously discussed, the Court finds that Lemus' testimony
26  at the suppression hearing was consistent with his declaration in the instant
    motion and, in any event, did not impact the state court ruling.  Therefore, the
    Court finds that "it is clear that the evidence sought is almost certainly
27  nonexistent." <u>Terrell</u>, 935 F.2d at 1018.  To the extent Plaintiff requests
    additional discovery for his perjury argument, the Court **RECOMMENDS** that
28  Plaintiff's motion be **DENIED**.

1   filed a separate motion for summary judgment in response to
2   Plaintiff's allegation that he "witnessed [the] unlawful beating,
3   [and] failed to intervene or report illegal activities." Lemus'
4   Mot. for Summ. J. at 7 (citing FAC at 2). Therein, Lemus argues
5   that he is entitled to summary judgment as a matter of law because
6   uncontroverted evidence shows that he was not present during the
7   conduct alleged by Plaintiff and, therefore, did not have an
8   opportunity to intercede. Id. at 5. Alternatively, Lemus argues
9   that Plaintiff has not produced evidence establishing a causal link
10  between the alleged inaction and Plaintiff's injuries or the alleged
11  constitutional deprivation. Id. Plaintiff responds that Lemus'
12  motion should be denied because Lemus was close enough to where
13  Wilson and Tagaban were allegedly beating Plaintiff that he could
14  have called out for them to stop and/or crossed the street and
15  intervened physically. Pl.'s Opp'n to Lemus' Mot. at 5.

16       Lemus acknowledges that "police officers have a duty to
17  intercede when their fellow officers violate the constitutional
18  rights of a suspect or other citizen." Cunningham v. Gates, 229
19  F.3d 1271, 1289 (9th Cir. 2000) (quotation omitted). However,
20  officers will be held liable for failing to intercede only if they
21  had a realistic opportunity to intercede. Id. (citing Gaudreault v.
22  Municipality of Salem, 923 F.2d 203, 207 n. 3 (1st Cir. 1990)).

23       Because this issue arises on summary judgment, Lemus bears the
24  initial burden of demonstrating that there is no genuine issue of
25  material fact. Celotex, 477 U.S. at 323. Lemus contends that
26  because he was over a block away from where the incident occurred,
27  he did not have a "realistic opportunity" to intercede. Lemus' Mot.
28  for Summ. J. at 5. In his declaration, Lemus explains that, after

1    his sales transaction with Plaintiff, he and Plaintiff walked down
2    J Street and then started walking in opposite directions when they
3    reached 16th Street.   Lemus' Decl. ¶ 7.   Lemus "continue[d] to
4    observe [Plaintiff] until another officer contacted him," at which
5    time Lemus was "approximately a block and a half away."   Id. ¶¶ 7-8.
6    When he "felt confident that the officer did contact the person who
7    just previously provided [him] with the white rock like substance in
8    exchange for the marked twenty dollar bill, [he] continued walking
9    away."   Id. ¶ 8.   "Within a matter of minutes," Lemus was picked up
10   and transported back to where Plaintiff was in custody.   Id. ¶ 9.
11   He asserts that he "did not observe or witness any physical contact,
12   take down or use of force by Officer Wilson or Officer Tagaban."
13   Id. ¶ 10.   In light of these facts, Lemus believes summary judgment
14   is warranted.

15        Viewing the inferences to be drawn from these facts in the
16   light most favorable to Plaintiff, as this Court is bound to do,
17   Anderson, 477 U.S. at 255, the Court finds that Lemus has not
18   satisfied his initial burden.   Lemus defines the issue on summary
19   judgment as whether "Officer Lemus could have perceived any use of
20   force which would constitute a violation of the Plaintiff's right to
21   be free from unreasonable force."   Lemus' Sur-Reply at 4 (emphasis
22   in original omitted).   By Lemus' own admission, he was only a block
23   and a half away and observed Plaintiff until he was contacted by
24   another officer.   A reasonable jury could conclude that Lemus was
25   close enough to see, or at the very least, hear the altercation and
26   call out to Wilson and Tagaban to stop or to alert other officers
27   via the recording device he was wearing to stop the misconduct.
28   And, since he was not picked up right away and did not arrive back

1  at the scene until Plaintiff already was in custody, Lemus has not

2  demonstrated that he was not in a reasonable position to intercede

3  during the somewhat protracted time it allegedly took for Wilson to

4  choke and trip Plaintiff and for Tagaban to arrive, beat Plaintiff

5  twelve to fourteen times with her flashlight, and then join Wilson

6  in arresting Plaintiff.  Furthermore, even if Lemus satisfied this

7  initial burden, Plaintiff created a material factual dispute as to

8  Lemus' location during this alleged incident by swearing in his own

9  affidavit that Lemus was just on the opposite side of the intersec-

10 tion of 16th and J Streets (as opposed to a block and a half away).[13]

11 Pl.'s Aff. at 3.  It is not for this Court to weigh the evidence

12 regarding where Lemus was standing and what he could and could not

13 observe or hear from that vantage point.  See Anderson, 477 U.S. at

14 255; Fairbank, 212 F.3d at 531.

15      Accordingly, the Court finds that summary judgment on this

16 basis is not appropriate and, therefore, **RECOMMENDS** that the Lemus

17 Motion be **DENIED.**

18 **D.    Failure to State a Claim Under the Fourteenth Amendment**

19      As an alternative basis for granting summary judgment,

20 Defendants argue that Plaintiff's Fourteenth Amendment claims fail

21 as a matter of law because claims of unreasonable search and seizure

22 and excessive force during arrest are properly analyzed under the

23 Fourth Amendment.  Officers' Mot. for Summ. J. at 19-21.

24

25      ───────────────

26      [13]   Lemus objects to the Court's consideration of Plaintiff's sur-reply,
    to which Plaintiff's affidavit is attached, on the grounds that Plaintiff had
    sufficient time to oppose the Lemus Motion and the sur-reply was not expressly
27  authorized by the Court.  Objection to Consideration of Pl.'s Sur-Reply on Lemus'
    Mot. [Doc. No. 104] at 2.  However, the Court subsequently accepted the sur-reply
    for filing and afforded Lemus additional time to file a response to the same.
28  See Doc. No. 105.

A claim under the Fourteenth Amendment implicates a substantive due process analysis and the Supreme Court has "always been reluctant to expand the concept of substantive due process." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1998) (quoting <u>Collins v. Harker Heights</u>, 503 U.S. 115, 125 (1992)).  The Supreme Court thus has concluded that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.) (internal quotation omitted).  Where, as here, the claim alleged is for excessive force arising in the context of an arrest, the claim "is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures.'" <u>Graham</u>, 490 U.S. at 394.  Accordingly, the Supreme Court has concluded that "<u>all</u> claims that law enforcement officers have used excessive force- deadly or not- in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." <u>Id.</u> at 395 (emphasis in original).

Defendants are correct that Plaintiff's excessive force claim (which is not separable from his "unreasonable search and seizure" claim) under the Fourteenth Amendment fails as a matter of law. Pursuant to <u>Graham</u>, this claim must be analyzed under the Fourth Amendment.  Plaintiff concedes as much, explaining that he only listed the Fourteenth Amendment in his FAC because of case law stating that the Fourth Amendment guarantees against unreasonable

1   search and seizure are made applicable to the states by way of the

2   Fourteenth Amendment's due process clause.  Pl.'s Opp'n to Officers'

3   Mot. at 18.   While Plaintiff's mistake is understandable and his

4   depth of research commendable, the Court nevertheless must **RECOMMEND**

5   that Defendants' motion for summary judgment on Plaintiff's

6   Fourteenth Amendment claims be **GRANTED**.

7   **E.    Qualified Immunity**

8        As a final, alternative basis for granting summary judgment,

9   Defendants argue that they are entitled to qualified immunity from

10  all of Plaintiff's claims.  Officers' Mot. for Summ. J. at 21-25.

11  Plaintiff disputes Defendants' qualified immunity analysis.  Pl.'s

12  Opp'n to Officers' Mot. at 19-21.

13       Qualified immunity shields government officials performing

14  discretionary functions from liability for civil damages unless

15  their conduct violates clearly established statutory or constitu-

16  tional rights of which a reasonable person would have known.

17  Anderson v. Creighton, 483 U.S. 635, 638-40 (1987).  "Qualified

18  immunity is 'an entitlement not to stand trial or face the other

19  burdens of litigation.'"  Saucier v. Katz, 533 U.S. 194, 200 (2001)

20  (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)), abrogated

21  on other grounds by Pearson v. Callahan, 129 S. Ct. 808 (2009).

22  This privilege is "an immunity from suit rather than a mere defense

23  to liability; and like an absolute immunity, it is effectively lost

24  if a case is erroneously permitted to go to trial."  Id. at 200-01

25  (emphasis in original) (quoting Mitchell, 472 U.S. at 526).  Thus,

26  the Supreme Court "repeatedly [has] stressed the importance of

27  resolving immunity questions at the earliest possible stage in

28  litigation."  Id. at 201 (quoting Hunter v. Bryant, 502 U.S. 224,

1   227 (1991) (per curiam)).

2        In Saucier, the Supreme Court established a two-step inquiry

3   for determining whether an official is entitled to qualified

4   immunity. Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. at 201.

5   "First, a court must decide whether the facts that a plaintiff has

6   alleged or shown make out a violation of a constitutional right.

7   Second, if the plaintiff has satisfied this first step, the court

8   must decide whether the right at issue was clearly established at

9   the time of defendant's alleged misconduct. Qualified immunity is

10  applicable unless the official's conduct violated a clearly

11  established constitutional right." Pearson, 129 S. Ct. at 815-16

12  (internal citations and quotations omitted). The Supreme Court has

13  determined that "while the sequence set forth [in Saucier] is often

14  appropriate, it should no longer be regarded as mandatory." Id. at

15  818. Instead, lower courts may "exercise their sound discretion in

16  deciding which of the two prongs of the qualified immunity analysis

17  should be addressed first in light of the circumstances in the

18  particular case at hand." Id.

19       Here, Plaintiff has alleged facts in his FAC which could "make

20  out a violation of a constitutional right." Pearson, 129 S.Ct. at

21  815-16. Specifically, Plaintiff alleges that Wilson grabbed his

22  throat, choked him, and repeatedly banged his head into the

23  concrete. FAC at 4. Plaintiff further alleges that Tagaban

24  repeatedly hit him on his head and shoulders with a metal flashlight

25  until he lost consciousness. Id. at 4-5. Finally, Petitioner

26  alleges that Lemus and Griffin witnessed the assault and did not

27  stop the illegal attack. Id. at 5. However, as discussed above,

28  the state court determined that Wilson and Tagaban did not use

excessive force in arresting Plaintiff and extracting the drug and monetary evidence from his possession and therefore Plaintiff has not and cannot establish a violation of a constitutional right. Order Denying Mot. to Suppress at 11-12; Ct. Appeal Order at 11-13. Because there are no remaining facts that create a genuine issue regarding whether these Defendants engaged in unconstitutional conduct, they are entitled to qualified immunity. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Johnson v. County of Los Angeles, 340 F.3d 787, 793-94 (9th Cir. 2003). Similarly, Lemus and Griffin are entitled to qualified immunity because even if they witnessed the alleged conduct, the conduct did not rise to the level of a constitutional violation.

For the reasons set forth above, this Court finds that Plaintiff has not provided, and cannot provide, facts that establish a violation of a clearly established constitutional right and the Court, therefore, **RECOMMENDS** that Defendants' motion for summary judgment also be **GRANTED** on this alternative ground that Defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation, (2) granting the Officers' Motion[14],

---

[14]  In November 2008, Plaintiff filed a discovery motion seeking "all records of citizen complaints and disciplinary actions relating to use of excessive force by San Diego (former) Police Officer Dennis Wilson." Doc. No. 72 at 2. At that time, Defendant Wilson had not yet been served with the complaint. Defendant Wilson filed an answer in February 2009. Doc. No. 97. In light of this Court's recommendation that the Officers' motion for summary judgement be granted and this case be dismissed, the Court **DENIES** without prejudice Plaintiff's discovery motion (Doc. No. 72). If the motion for summary judgement is not granted and the case proceeds against Officer Wilson, Plaintiff may refile his discovery motion.

1   (3) denying the Lemus Motion, and (4) denying Plaintiff's Rule 56(f)

2   motion.

3       **IT IS HEREBY ORDERED** that any written objections to this Report

4   must be filed with the Court and served on all parties **no later than**

5   **July 6, 2009**.   The document should be captioned "Objections to

6   Report and Recommendation."

7       **IT IS FURTHER ORDERED** that any reply to the objections shall

8   be filed with the Court and served on all parties **no later than July**

9   **27, 2009.**   The parties are advised that failure to file objections

10  within the specified time may waive the right to raise those

11  objections on appeal of the Court's order.   See <u>Turner v. Duncan</u>,

12  158 F.3d 449, 455 (9th Cir. 1998).

13      **IT IS SO ORDERED.**

14

15  DATED:   <u>June 15, 2009</u>

16

17                     BARBARA L. MAJOR
                       United States Magistrate Judge
18

19

20

21

22

23

24

25

26

27

28